**Richard PARKS, Plaintiff–Appellee,**

v.

**WARREN CORRECTIONAL INSTITUTION, and Anthony Brigano, Defendants–Appellants.**

No. 01–4015.

United States Court of Appeals, Sixth Circuit.

Nov. 13, 2002.

Before KRUPANSKY and COLE, Circuit Judges; and DUGGAN,* District Judge.

DUGGAN, District Judge.

Defendant–Appellant, Warden Anthony Brigano ("Brigano"), appeals the district

* The Honorable Patrick J. Duggan, Senior    United States District Judge for the Eastern

court's denial of qualified immunity in his summary judgment motion. For the reasons set forth below, we DISMISS this appeal for lack of jurisdiction.

## I. Background

Plaintiff–Appellee, Richard A. Parks ("Parks"), brought this action against Defendants claiming he was disciplined with respect to his employment and terminated from his employment because of his race. Parks, an African–American, began working as a corrections officer for Warren Correctional Institution ("WCI") in 1993. In 1997, Parks, along with a group of other WCI employees, complained to a State senator and State representative about disciplinary issues at WCI. Brigano was generally aware of Parks' complaints to the State legislators.

Parks' claims against Brigano stem from disciplinary actions taken against him in 1998 and 1999, including his termination in 1999. Parks' evidence of racial discrimination in the disciplinary actions and his termination is a statement allegedly made by Pat Mayer, a labor relations officer at WCI, regarding the WCI administration. In this statement, which Mayer denies making, Mayer stated that the administration at WCI viewed Parks as a "black radical" or "radical black." According to Parks, Mayer told him that the administration's view of him as a "black radical" would be considered when the administration took disciplinary actions against Parks.

After he was terminated, Parks brought claims under Title VII, § 1981, and § 1983 against WCI and Brigano. The district court granted summary judgment to Defendants with respect to Parks' Title VII claims. The court denied, however, Brigano's claim of qualified immunity with respect to Parks' claims under §§ 1981 and 1983. Brigano has brought this interlocutory appeal of the district court's denial of qualified immunity in his summary judgment motion.

## II. Standards

This Court reviews a district court's denial of qualified immunity *de novo. Sheets v. Mullins,* 287 F.3d 581 (6th Cir.2002) (citation omitted). "The defendant bears the burden of pleading the defense, but the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Id.* (citation omitted). Plaintiff bears the ultimate burden of proof to show that defendant is not entitled to the defense. *Id.*

In evaluating whether or not a defendant is entitled to the defense of qualified immunity, the Court must first determine whether or not there was a violation of a constitutional right. If, looking at the evidence in a light most favorable to Plaintiff, the alleged facts show a violation of a constitutional right, then the Court must determine whether the right was clearly established, *i.e.,* "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Klein v. Long, et al.,* 275 F.3d 544, 550 (6th Cir.2001)(citing *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

To the extent an appeal turns on an issue of law, a district court's denial of summary judgment based on qualified immunity is immediately appealable under 28 U.S.C. § 1291. *Frantz v. Village of Bradford,* 245 F.3d 869, 871 (6th Cir.2001). A

District of Michigan, sitting by designation.

defendant may not, however, "appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* (citation omitted).

The Supreme Court in *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), defined the scope of interlocutory appeals of a district court's denial of qualified immunity. The Court in *Johnson* discussed the reasons why interlocutory appeals are allowed for qualified immunity, and why such appeals must be limited in scope. The Court stated that:

> considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of "qualified immunity" matters to cases presenting more abstract issues of law. Considering these "competing considerations," we are persuaded that "[i]mmunity appeals ... interfere less with the final judgment rule if they [are] limited to cases presenting neat abstract issues of law."

*Johnson*, 515 U.S. at 317, 115 S.Ct. at 2158 (citations omitted). In *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), the Court explained its decision in *Johnson* by stating:

> *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision".... *Johnson* reaffirmed that summary judgment determinations *are* appealable when

they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity ... typically, the issue whether the federal right allegedly infringed was "clearly established[.]"

*Behrens*, 516 U.S. at 313, 116 S.Ct. at 842 (citations omitted)(emphasis in original).

In *Ellis v. Washington County and Johnson City, Tenn.*, 198 F.3d 225 (6th Cir.1999), this Court applied *Johnson* to a case where the factual dispute was based on uncorroborated hearsay and held that "[n]onetheless, restrained as we are by Johnson, we must dismiss [the] appeal because a factual dispute remains." *Id.* at 229. The Court stated that:

> In a qualified immunity appeal by a state official, should the court of appeals look behind a *Johnson v. Jones* type factual dispute to determine if the factual dispute is based only on uncorroborated hearsay that will not be admissible at trial. We would prefer to avoid these kinds of evidentiary issues when ruling on our jurisdiction to decide qualified immunity under *Johnson v. Jones* because the issue of qualified immunity cannot be "decided with reference only to undisputed facts," the requirement for appellate jurisdiction set out by the Supreme Court....

*Id.* (citation omitted).

Thus, in the case at bar, this Court only has jurisdiction of this interlocutory appeal to the extent the appeal is based on an abstract issue of law, *i.e.*, whether Parks' right that Brigano allegedly violated was clearly established. While it is true that in evaluating any qualified immunity claim the first inquiry is whether or not there is a constitutional violation, *Klein, supra*, if there is a factual dispute with respect to that issue, then this Court cannot review the issue of qualified immunity. "In this circuit, it is well established that, for appellate jurisdiction to lie over an interlocu-

tory appeal, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case . . . the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case." *Sheets,* 287 F.3d at 585 (quoting, in part, *Berryman v. Rieger,* 150 F.3d 561, 563 (6th Cir.1998)).

### III. Analysis

In deciding the qualified immunity defense, the district court stated:

> Defendants suggest, in a sentence at the conclusion of the memorandum in support of their motion for summary judgment, that Defendant Brigano is entitled to qualified immunity with respect to Plaintiff's claims under §§ 1981 and 1983. Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A constitutional right must be clearly established in a particularized sense. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*
>
> Defendant Brigano *does not deny* that racial discrimination in employment violates the Equal Protection Clause or that a reasonable person in his position would have known that Plaintiff had a right not to be subjected to discrimination on the basis of his race. The Court is not persuaded, by virtue of Defendant

Brigano's brief argument, that he is entitled to qualified immunity.

(J.A. at 31)(emphasis added). It is clear from the court's discussion that the court did not decide a dispute involving any "abstract issue of law." Furthermore, the issues raised by Brigano in this appeal do not concern any "abstract issue of law."

Brigano's statement of the issue presented in this appeal highlights the factual, rather than legal, dispute in this case. Brigano states the issue as "[w]hether a Warden loses qualified immunity *based upon hearsay evidence which fails to show* that he held any racial animus when he disciplined an employee." (Appellant's Br. at vi)(emphasis added). It is clear from this statement that the issue on appeal is the sufficiency and quality of the evidence. Brigano makes two main arguments in this appeal: A) there is no *respondeat superior* liability under § 1983; and B) Parks failed to introduce any direct evidence of race discrimination.

#### A. *Respondeat Superior:*

Brigano contends that the district court improperly based its decision on *respondeat superior* liability because, "[i]t determined that Warden Brigano is liable for the Mayer statement that Parks is a black radical." There is nothing in the record to support Brigano's claim that the district court ever considered the issue of *respondeat superior.* Parks' claim against Brigano is not that Brigano and the other defendants are liable for the statement allegedly made by Mayer. Parks' claim is that the Defendants' decision to terminate Parks was based on racial discrimination. The district court did not determine that "Brigano is liable" for Mayer's statement. Brigano's liability stems from his own actions in terminating Parks. Mayer's statement is offered as evidence that this termination was in violation of Parks' con-

stitutional rights. Therefore, Brigano's claim that the district court erroneously based its decision on *respondeat superior* liability is without merit.

## B. Evidentiary Arguments:

Appellant raises three arguments under the heading "Parks Failed to Introduce Any Direct Evidence of Race Discrimination." These three arguments are: 1) Mayer's Comment is Not Direct Evidence of Race Discrimination; 2) Even if the Mayer Comment is Direct Evidence of Race Discrimination, There Must Be a Nexus Between the Comment and His Suspension or Termination; 3) Mayer's Comment is Hearsay and Cannot Defeat a Summary Judgment Motion.

All three of these arguments relate to factual disputes and therefore, may not be considered by this Court in a qualified immunity analysis. Furthermore, these arguments address the propriety of summary judgment on Parks' claim based on the type and sufficiency of the evidence presented to the district court.

Brigano's argument regarding hearsay evidence fails to provide Brigano with a basis for appeal. Challenges to "the quantity and quality of" evidence cannot be a basis for such an appeal. *Berryman*, 150 F.3d at 564(citation and internal quotations omitted). Even when the district court's denial of summary judgment is based solely upon "the rankest type of inadmissible hearsay," this Court cannot address the factual dispute. *Ellis*, 198 F.3d at 229. Therefore, Brigano's arguments regarding evidentiary issues cannot be the basis for this interlocutory appeal.

## IV. Conclusion

The district court's decision denying Brigano qualified immunity did not decide any abstract issues of law. Brigano's appeal only raises issues of factual disputes concerning the district court's decision. Because this in an interlocutory appeal, these factual disputes do not provide this Court with jurisdiction over the appeal. Therefore, the appeal is DISMISSED for lack of jurisdiction.

ROBERT B. KRUPANSKY, Circuit Judge, dissenting.

KRUPANSKY, Circuit Judge.

Following *de novo* examination of the lower court's summary judgment that appellant Warden Anthony Brigano ("Brigano"), in this his individual capacity, is not entitled to pre-trial dismissal as a party defendant based upon qualified immunity, the panel majority has concluded that the subject appeal should be dismissed, for purported lack of jurisdiction, on the rationale that Brigano's qualified immunity defense is not amenable to pre-trial interlocutory appellate assessment, because relevant factual issues remain in controversy.

A careful examination of both the discovery record and the controlling legal authorities has persuaded me that no *material* factual dispute exists which is pertinent to Brigano's qualified immunity defense, and therefore interlocutory jurisdiction over the subject appeal is proper. The record proof, even when construed most favorably for the plaintiff, *compels* the legal conclusion that Brigano is insulated, by qualified immunity, at the pre-trial stage, from exposure to the subject lawsuit. Accordingly, I would reverse the lower court's denial of Brigano's petition for qualified immunity, grant summary judgment for Brigano, and remand this action to the district court with instructions to dismiss Brigano, with prejudice, as a party to the instant lawsuit.

Briefly summarized, the plaintiff-appellee Richard Parks ("Parks"), an African–

American, has complained that, while employed as a corrections officer by defendant Warren Correctional Institution ("Warren" or "WCI"), an Ohio state prison, he suffered adverse disparate treatment in public employment by reason of his race, in violation of his federally-protected civil rights. *See* 42 U.S.C. § 1981 (prohibiting, among other things, racial discrimination in contracting by state actors) and § 1983 (outlawing, *inter alia,* the deprivation of any person's constitutional rights by individuals acting under color of state law).[1] Among other allegations, which are not pertinent to the subject interlocutory appeal, Parks has contended that Warden Brigano personally discriminated against him because of his color in 1998 and early 1999 in connection with his disciplinary suspensions, for two separate five-day durations, which had been instigated by Parks' failures to adhere to WCI's established "call-in" procedures related to unscheduled employment absences; and again in June 1999, when the prison terminated Parks' employment because of his May 1999 unauthorized abandonment of his assigned post and his abusive treatment of a fellow corrections officer. No dispute exists that Warden Brigano authorized Parks' disciplinary

suspensions and ultimate employment discharge.

On June 20, 2000, the plaintiff initiated an unverified complaint in federal district court whereby he charged WCI and Brigano with racial discrimination. He sued Brigano in both his official and individual capacities. A state officer may be sued in his individual capacity for monetary damages if that individual, while acting under color of state law, had deprived the complainant of a federally protected right. *E.g. Goad v. Mitchell,* 297 F.3d 497, 501 (6th Cir.2002). However, state agents are insulated by the "qualified" or "good faith" immunity doctrine from exposure to "individual capacity" lawsuits anchored in a discretionary official decision if "their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known," even if their actions *actually violated* the plaintiff's federal rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). (Bracketed material added).

The qualified immunity bestowed upon state agents "sweeps broadly, affording them ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the

---

1. Parks has prosecuted a "direct evidence" claim of "disparate treatment in employment" by state agents under 42 U.S.C. §§ 1981, 1983. "Direct evidence [of employment discrimination] 'is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir. 2000) (brackets added) (*quoting Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999)). *IF THE PLAINTIFF PRODUCES SUFFICIENT DIRECT EVIDENCE OF DISCRIMINATION, "THE BURDEN OF PERSUASION THEN SHIFTS TO THE DEFENDANT TO SHOW THAT IT WOULD HAVE TERMINATED THE PLAINTIFF'S EMPLOYMENT ABSENT THE*

*DISCRIMINATORY MOTIVE." Weberg,* 229 F.3d at 522 (emphases added) (*citing Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

As developed further herein, the defense of qualified immunity may, in proper cases, bar any claim targeted against a state officer in his personal capacity, irrespective of which federal civil rights statute(s) averredly supported it. *See, e.g., Johnson v. Estate of Laccheo,* 935 F.2d 109, 110–11 (6th Cir.1991) (recognizing that qualified immunity may quarantine a state official from a lawsuit asserted under §§ 1981, 1983, and/or other federal civil rights provisions); *Crutcher v. Commonwealth of Kentucky,* 883 F.2d 502, 503–04 (6th Cir.1989) (same re §§ 1981 and 1983).

law." *Scott v. Clay County, Tenn.*, 205 F.3d 867, 873–74 n. 9 (6th Cir.) (citations and internal quotation marks omitted), *cert. denied*, 531 U.S. 874, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). Where applicable, that doctrine exonerates individual-capacity defendants not only from ultimate *liability* for their discretionary judgments, but further *excuses them from the rigors and expenses of defensive litigation. Id.* For that reason, the qualified immunity issue should be resolved at the *earliest possible practicable stage* of an individual-capacity lawsuit. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Goad*, 297 F.3d at 501. The defendant initially must properly raise the defense. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir.2002). However, because state workers are presumptively protected by the subject immunization, *"THE ULTIMATE BURDEN OF PROOF IS ON THE PLAINTIFF TO SHOW THAT THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY."* *Rich v. City of Mayfield Hts.*, 955 F.2d 1092, 1095 (6th Cir.1992). (Emphases added). Because the question whether qualified immunity should apply is ultimately an issue of law, the appellate court's examination is *de novo*. *Sheets*, 287 F.3d at 586.

Nonetheless, if a district court denies a defendant's pre-trial motion for qualified immunity because one or more *subordinate predicate factual disputes* must be resolved by a fact-finder, the court of appeals will ordinarily lack jurisdiction to address the immunity issue via a pre-judgment interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 313–15, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). By contrast, if the lower court's denial of qualified immunity was *SUPPORTED BY A PURE CONCLUSION OF LAW, THE INTERMEDIARY COURT POSSESSES JURISDICTION TO RESOLVE THE DEFENDANT'S INTERLOCUTORY CHALLENGE OF THAT PRE–JUDGMENT ADVERSE RULING. Id.* at 309–12, 115 S.Ct. 2151. If no conflicting record proof exists regarding a material fact issue, or if the defendant concedes, for the sake of his appeal, that the version of the record facts, together with all reasonable inferences derivable therefrom, which are the most favorable to the plaintiff, should be assumed to be accurate, the application of qualified immunity in light of those undisputed facts constitutes a strict question of law which the circuit court should resolve immediately. *Saucier*, 533 U.S. at 200–01, 121 S.Ct. 2151; *Behrens v. Pelletier*, 516 U.S. 299, 312–13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

Indeed, *even if* the district court had denied qualified immunity because it concluded that a disputed issue of material fact existed which must be tried, and *even if* the defendant did not expressly stipulate to the plaintiff's construction of the facts and evidentiary inferences for purposes of interlocutory review, THE COURT OF APPEALS MAY NONETHELESS EXERCISE INTERLOCUTORY JURISDICTION OVER THE QUALIFIED IMMUNITY ISSUE *IF IT CONCLUDES THAT THE DECISIVE ISSUE POSED IS ONE OF LAW.* Stated differently, if the facts of record, when *construed most favorably for the plaintiff*, cannot, as a matter of law, carry the plaintiff's burden of disproving the defendant's presumptive entitlement to qualified immunity, the court of appeals may exercise jurisdiction and release the defendant prior to trial. *See, e.g., Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir.1999); *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir.1996).

In the case *instanter*, the defendant Brigano declared in his appellant's Opening Brief, page v ("Jurisdictional Statement"), that: "For purposes of this appeal only,

Warden Brigano stipulates to the facts as determined by the district court." Nonetheless, the panel majority has opined that Brigano has, on appeal, challenged the district court's pro-plaintiff construction of the material facts, and therefore has failed to concede, for purposes of review, the facts as construed most favorably for Parks. The panel majority has concluded that Brigano's failure to make that concession has deprived this reviewing court of jurisdiction.

However, at bottom, Brigano has *not* contested the *facts* as found by the district court, nor any other colorable version of the material proof which might arguably favor the plaintiff. His argument did not distill its essence from an attack against the credibility of any plaintiff's witness; nor has he requested the court to discredit or ignore any testimony favorable to the plaintiff in deference to any conflicting pro-defendant evidence worthy of superior credence.[2] Rather, Brigano has assailed the *legal sufficiency* of the record proof, even when it is construed most favorably for the plaintiff, to carry the plaintiff's legal burden of *DISPROVING* Brigano's entitlement to qualified immunity. Moreover, even to the extent that Brigano may have argued that certain portions of the plaintiff's evidence should be excluded, or that the defendant's overall proof outweighed that of his opponent, the mere inclusion of such a fact-based attack among his challenges to the district judge's adverse ruling would not *automatically* deny this reviewing court jurisdiction over

this action, if the court concludes that the evidenced facts, even when interpreted most favorably for Parks, cannot carry Parks' burden of proof as a matter of law. *See, e.g., Klein v. Long,* 275 F.3d 544, 549 (6th Cir.2001) ("Only if the undisputed facts *or the evidence viewed in the light most favorable to the plaintiff* fail to establish a prima facie violation of clear constitutional law may we decide that the defendant is entitled to qualified immunity on an interlocutory appeal.") (citations omitted; emphasis added), *cert. denied,* —— U.S. ——, 123 S.Ct. 95, —— L.Ed.2d ——, 2002 WL 1291235 (U.S. Oct. 7, 2002) (No. 01–1742).

As a matter of law, Warden Brigano is accountable, in his personal capacity, *only* for constitutional torts in which he *personally participated;* he cannot be charged with strict *respondeat superior* accountability for any unknown or unforeseeable misconduct by his subordinates. *See Salehpour v. University of Tennessee,* 159 F.3d 199, 206–07 (6th Cir.1998) (directing that a natural person defendant can be liable under the civil rights acts only for his *personal unconstitutional actions); Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988) (instructing that personal liability in civil rights actions depends upon *active involvement by the defendant* in the constitutional tort; at minimum, the defendant must have encouraged, approved, or knowingly acquiesced in the rights violation actually committed by others).

In the case *instanter,* the sole purported direct evidence of constitutional wrongdo-

---

**2.** Although Brigano has contended that certain testimony by Parks and Doug Hunter, discussed below, should be discarded as inadmissible hearsay, that argument is essentially legal in nature; it does not turn on any comparative weighing of contrary evidence or any assessment of witness credibility, which issues reside within the province of a trial factfinder. In any event, as developed herein, the

resolution of that controversy is ultimately immaterial, because, even accepting the proffered hearsay for purposes of the pre-trial qualified immunity analysis, that testimony is legally insufficient to create a triable issue as to whether Brigano may have violated any clearly established federal right possessed by Parks.

ing by Warden Brigano was hearsay testimony by Parks, and his union steward Doug Hunter ("Hunter"), that, shortly prior to a pre-disciplinary conference which had preceded Parks' five-day suspension in January 1998, they had been told by Patrick Mayer ("Mayer"), a Warren labor relations officer, that some unidentified member(s) of the WCI administration considered Parks to be a "black radical" or a "radical Black," and that any disciplinary measures recommended against him by the executive committee (which is the managerial body charged with advising the warden regarding punitive actions) "would be considered from that perspective." [3] *See* Hunter affidavit, ¶ 4. Parks testified at deposition:

> [Mayer had told him that] [m]anagement kind of sees you as a radical black. I [Parks] kind of sat back and, you know, looked at him. I looked at Doug, you know, we kind of laughed. Like yea, I said, who told you that? That's what they said. I've heard it out their mouth.

However, at deposition, Parks conceded that Mayer never attributed that viewpoint to any particular management official.

Accordingly, the *most* that the proffered hearsay could be construed to evince is that Mayer told Parks and Hunter that *he believed* that one or more members of the WCI management staff deemed Parks to be a "radical" African–American; and that Mayer had derived that subjective impression from the unrevealed substance of one or more articulations by one or more unidentified supervisory employee(s) made under undisclosed circumstances. The statements attributed to Mayer did not evidence personal knowledge that the disciplinary judgment of any person on the executive committee had actually been contaminated by a biased opinion of Parks, that any person who may have held a

prejudiced view of Parks had in fact ever recommended any discipline against him, that a punitive recommendation by any such person had ever been adopted by Warden Brigano, or that Brigano knew that any member of his executive staff had ever expressed a racist opinion of Parks. All that Mayer's purported statements can be said to evidence is that he heard some unnamed managerial officer say something at some point which led him to subjectively conclude that the speaker deemed Parks to be a "radical" African–American. *See Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir.1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age [or race] discrimination."). (Citation omitted).

No eyewitness reported any precise relevant words uttered by any identified executive staff member at any specified time or place. No evidence implicated Brigano in any personal discriminatory activity against the plaintiff; nor did any evidence directly link him to the alleged biased opinion. Absolutely no evidence, not even hearsay, was proffered which could be construed to disclose (1) precisely which individual(s) might have made statements which purportedly advanced a belief that Parks was a "radical" African–American, (2) the precise contents of any such statement, (3) any time frame within which such a statement might have been made, (4) in whose presence such a statement might have been issued, (5) any reaction which such a statement drew from any percipient witness, or (6) any other specifics about the alleged vaguely-expressed viewpoint.

Nevertheless, the district court decided that, after construing the evidence most favorably for Parks, a jury could infer that some member(s) of the WCI executive committee had made one or more state-

---

**3.** Mayer denied, under oath, that he made such a statement to anyone at any time.

ments *during official session(s)* which betrayed the belief that Parks was a "radical Black" or "black radical;" that *that opinion influenced their collective disciplinary judgment towards Parks;* and that *Warden Brigano had knowingly adopted their racially-biased disciplinary recommendations.* That string of impermissibly-stacked inferences, *see in re Beverly Hills Fire Litigation,* 695 F.2d 207, 222 (6th Cir.1982); *United States v. Bentz,* 234 F.3d 1270 (Table), 2000 WL 1648126, at *3 (6th Cir. Oct.27, 2000) (unpub'd per curiam), is rife with logically non-sustainable conclusions which, on the subject record even when construed most favorably for the plaintiff, can be supported by nothing other than speculation, conjecture, empty theorizing, and creative guesswork.

Mayer's averred personal belief that the "radical Black" perspective would substantively influence the executive committee's disciplinary decisions regarding Parks was unsupported by any direct probative evidence that the charged biased opinion had ever entered any specifically-identified deliberations of the executive staff which concerned Parks' discipline. Likewise, only speculation could support the conclusion that any statement reflecting bigotry against Parks which may have been made by some unnamed executive committee member was made during an official session, or even that any other member of the committee knew of such a pronouncement. Most fundamentally, *even if all other members* of the executive committee had been contaminated by a racially bigoted opinion of Parks, nothing but impermissible conjecture could support the conclusion that *Brigano* had *knowingly* adopted and/or acquiesced in that view, and hence had knowingly participated in and/or implemented any allegedly unfair racially-propelled disciplinary recommendation.

The plaintiff's hypothesis that Warden Brigano must have been involved in racial discrimination against him simply because some unknown member of Brigano's executive staff may have, at some unspecified time and place, expressed the personal opinion that Parks was a "radical" African–American, is a mere speculative "conspiracy theory" unsupported by requisite evidence of Brigano's direct, personal, volitional involvement in racial discrimination against the plaintiff. *See Mulhall v. Ashcroft,* 287 F.3d 543, 552 (6th Cir.2002) (ruling, in an employment retaliation case in which no evidence had contradicted the testimony of the employer's decision-makers that they did not know about the plaintiff's protected activity when they imposed the faulted adverse employment action against him, that summary judgment for the defendant was mandated, because "the inferences plaintiff sought to draw from evidence were akin to flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from personal experience."). (Citation, brackets, and quotation marks omitted). Generally, evidence of isolated, vague, ambiguous, and temporally remote remarks, made by an unknown speaker under unknown circumstances not necessarily connected to any adverse employment action, is simply non-probative of any unlawful discrimination personally undertaken by an individual-capacity supervisory public official. *See, e.g., Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330–31 (6th Cir.1994).

Accordingly, upon *de novo* review of the trial court's decision, I would rule that (1) the district court has applied an erroneous legal standard, in that the burden of *disproving* Brigano's entitlement to qualified immunity rested upon Parks, and (2) Parks has failed to carry that burden of proof, because he proffered no probative evidence from which a rational fact-finder could reasonably infer that Brigano had personally engaged in any race-based employment discrimination against him. Consequently, because the record evi-

dence, even when construed most favorably for the plaintiff, could not support a factual finding that Brigano had knowingly discriminated against Parks, Brigano is entitled to immediate release from the subject lawsuit by operation of the qualified immunity doctrine, because the plaintiff will be unable to prove at trial that Brigano had violated any clearly established federal right possessed by him. As evolved herein, this reviewing panel has a duty to discharge, at the earliest possible stage of the litigation, any public official individual-capacity defendant entitled to the shield of qualified immunity. Therefore, I would reverse the lower court's denial of Warden Brigano's petition for qualified immunity, and remand to the district court with instructions to enter final summary judgment in his favor.

Accordingly, I dissent.