RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0012P (6th Cir.)
File Name: 03a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TORRE S. CROCKETT;
DUSHON L. GREENE,
        *Plaintiffs-Appellees,*

        *v.*

CUMBERLAND COLLEGE;
MICHAEL B. COLEGROVE; K.
DAVID KERSEY,
        *Defendants,*

CITY OF WILLIAMSBURG,
KENTUCKY; DON HAMLIN,
        *Defendants-Appellants.*

No. 01-5306

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 99-00513—Jennifer B. Coffman, District Judge.

Argued: March 6, 2002

Decided and Filed: January 13, 2003

Before:  MOORE and COLE, Circuit Judges; TARNOW, District Judge.[*]

---

**COUNSEL**

---

**ARGUED:** Sarannah L. McMurtry, CLARK, WARD & CAVE, Brentwood, Tennessee, for Appellants.  Julie A. Butcher, Lexington, Kentucky, for Appellees. **ON BRIEF:** Sarannah L. McMurtry, Peggy L. Tolson, CLARK, WARD & CAVE, Brentwood, Tennessee, for Appellants.  Julie A. Butcher, Lexington, Kentucky, for Appellees.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. On December 4, 1998, defendant-appellant, Don Hamlin, then the Co-Chief of Police for the City of Williamsburg, Kentucky (the "City"), arrested plaintiffs-appellees, Torre S. Crockett and DuShon L. Greene, both students at Cumberland College, for complicity in the rape of another Cumberland College student. Following their arrest, Crockett and Greene were detained in jail for ten days. Although they were never indicted, Crockett and Greene were suspended from Cumberland College and given failing grades in all their classes. As a result of these events, Crockett and Greene sued Hamlin, the City, Cumberland College, Michael B. Colegrove, the Vice-President of Cumberland College, and K. David Kersey, the Whitley County Attorney. Crockett and Greene sought relief in federal court on seven counts, two under § 1983 for due process violations and five under Kentucky tort law. Hamlin and the City moved for summary judgment and in so doing raised several defenses, including

---

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

unsubstantiated arrests with impunity"). Moreover, the fact that Crockett and Greene were never indicted for the crime of arrest does not invalidate Hamlin's finding that probable cause to arrest them existed. *See Stone v. Powell*, 428 U.S. 465, 540-41 (citing *Pierson*, 386 U.S. at 555; *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

Hamlin conducted a sufficient investigation by personally interviewing Doe and Roe and relying on the advice of Kersey. From this investigation Hamlin was able to properly determine that probable cause to arrest Crockett and Greene existed. Later, in ordering the arrest, Hamlin relied upon the judicially-approved warrant. Accordingly, Hamlin is entitled to qualified immunity for his conduct in arresting Crockett and Greene.

**IV. Conclusion**

For the reasons above, we **REVERSE** the district court's denial of qualified immunity and **DISMISS** the City of Williamsburg's appeal for lack of appellate jurisdiction.

unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640. Thus, our inquiry must focus on whether a reasonable officer would believe, as Hamlin did, that, based upon the statements of Doe and Roe and the advice of Kersey, probable cause to arrest Crockett and Greene for complicity to commit rape existed. We find that a reasonable officer would possess such a belief. At the broadest level, "[i]t is clearly established that an arrest without probable cause violates the Fourth Amendment." *Donovan*, 105 F.3d at 297-98. Further particularizing the contours of the Fourth Amendment right as we are required to do by *Anderson*, it is clearly established that reliance on the account of an eyewitness is sufficient to established probable cause. *Ahlers*, 188 F.3d at 370. Hamlin's reliance on the advice of an attorney further supports the reasonableness of Hamlin's belief that probable cause existed. Ultimately, the arrest was sanctioned by a judge who agreed that probable cause existed and issued an arrest warrant based on Hamlin and Kersey's affidavit.

The warrant application drafted by Kersey and signed by Hamlin, although minimal, was not barren of indicia of probable cause. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of qualified immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). There is no evidence that Hamlin or Kersey knowingly made material misstatements in the arrest warrant application. *See Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) ("An action under § 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth."); *Hutsell v. Sayre*, 5 F.3d 996, 1003 (6th Cir. 1993); *see also Ahlers*, 188 F.3d at 371 (noting that police officers may not make "hasty,

qualified immunity. Although the district court granted summary judgment in favor of Hamlin and the City on one state-law claim, it rejected Hamlin's qualified immunity defense and denied summary judgment on the § 1983 claims. Hamlin and the City immediately appealed the denial of summary judgment arguing that qualified immunity protected Hamlin and that the City was not liable based on principles of § 1983 municipal liability. For the reasons that follow, we **REVERSE** the district court's denial of qualified immunity and **DISMISS** the City's appeal for lack of jurisdiction.

## I. Background

On the evening of December 3, 1998, two female students, Jane Doe and Sally Roe,[1] accompanied three male students, Rod Bostic and plaintiffs-appellants Crockett and Greene, into a male student residence hall at Cumberland College. In Bostic's dorm room, with the lights out, the students engaged in dancing, tickling, and slap boxing. On one bed, Bostic and Greene tickled Doe, while, on another bed, Crockett and Roe tickled each other and became intimate. At times, the women playfully called to each other for help.

As these events were transpiring, another male student, Demetrus Shannon, entered the room. Shannon whispered to Bostic. According to Doe, shortly after Shannon entered the room, Bostic held Doe while Shannon touched her vagina with his finger and then raped her.

At about this time, Roe looked up and saw Shannon standing in the middle of the room. In her words, Roe "finally got away from Crockett", left him on the bed by himself, and went over to the other bed to "help" Doe get away from Greene and Bostic. As Roe approached the other bed in the dark, Greene, who had stopped tickling Doe, grabbed Roe and pulled her on top of him. Roe tried to get

---

[1] The names of these students have been omitted to protect their privacy.

away, but Greene persisted. As she struggled with Greene, Roe noticed that Doe was hitting Bostic on the back and telling him to get off of her. Roe also saw Shannon standing in front of Doe, who had her pants and underwear removed. At this point, Roe recognized that Doe was not laughing any more and tried to investigate further, but Greene refused to let her go.

Shortly after the alleged rape began, another student, Aaron Philips, knocked on the door. At that point, someone inside the room turned the light on, and Doe put her clothes on, told Philips and Shannon that nothing was wrong, and left the room alone. Roe remained in the room a short while before leaving too. Crockett and Greene returned to their dorm room to play video games. When Roe left, she encountered Doe outside. Doe then explained that Shannon had raped her. Roe, learning this for the first time, cried with Doe. Together, Roe and Doe reported the incident to the Dean of Student Life, Linda Carter.

Cumberland College personnel took Doe and Roe to Corbin Hospital so that Doe could undergo a rape examination. Carter informed the City police and Cumberland College Vice-President Michael Colegrove of the alleged rape. Carter filed a campus incident report and a police report.

Cumberland College personnel brought Bostic, Crockett, Greene, and, eventually, Shannon to the Student Center. Over a period of several hours, Colegrove questioned Crockett and Greene, who responded that they did not know what was going on, including that Doe had been raped.

Hamlin arrived at Cumberland College to speak with college officials. Hamlin did not interview Shannon, Bostic, Crockett, and Greene. Rather, Hamlin went to the hospital where he questioned Doe and Roe extensively and reviewed their version of the events that took place earlier that evening. The Whitley County Attorney, defendant Kersey, later joined Hamlin and interviewed Doe and Roe at the hospital. After

alleged rape. They had opportunities to plan with Shannon and Bostic to assist the alleged rape. They also could have known more about Shannon and Bostic's intentions than Roe did. In sum, the facts available to Hamlin were sufficient to give rise to the conclusion that there was a reasonable probability that the plaintiffs had committed the offense of complicity to commit rape. Viewing the evidence in the light most favorable to the plaintiffs, no reasonable jury could find that Hamlin had lacked probable cause to arrest Crockett and Greene. Because there was probable cause for their arrest, Crockett and Greene cannot satisfy the first prong of the qualified immunity analysis: that Hamlin violated their constitutional right not to be arrested without probable cause.

### B. Whether a Reasonable Officer Would Believe that Officer Hamlin Had Violated Crockett and Greene's Clearly Established Constitutional Rights

Even assuming that probable cause did not exist for the arrests of Crockett and Greene, Hamlin would be entitled to qualified immunity unless a reasonable officer would know that Hamlin's alleged conduct violated a clearly established federal right. *Anderson*, 483 U.S. at 640; *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996). Where clearly established law is violated, qualified immunity is inappropriate because "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.

Whether the right at issue was "clearly established" will turn on the "particularized" circumstances of the case. *Anderson*, 483 U.S. at 640; *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589-90, 592 (6th Cir. 1994). The Supreme Court has limited the application of the "clearly established law" requirement, by explaining that:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity

identification will constitute sufficient probable cause 'unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness 'was lying . . . [in]accurate . . . or . . . mistaken.''"). Hamlin relied on both Roe's and Doe's description of the events. Notably, in interviewing Roe about Doe's alleged rape, Hamlin learned that Crockett and Greene had prevented Roe from approaching Doe even though Roe struggled to free herself and told them that Doe was no longer laughing. Hamlin also relied on Doe's repeated statement to him: "I can't believe DuShon [Greene] and Torre [Crockett]. They were my friends; they were my friends." In addition to the statements of Doe and Roe in making the determination that probable cause existed, Hamlin relied on the advice of County Attorney Kersey and Kersey's understanding of what Doe and Roe claimed happened.

Based on this information, Hamlin reasonably believed that Crockett and Greene aided, counseled, or attempted to aid Shannon and Bostic in planning or committing the rape and that plaintiffs possessed the specific intent to promote or facilitate the commission of the rape. Hamlin was not required to interview Crockett or Greene. Once probable cause is established, as it was here, an officer "is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371.

Certainly Hamlin's conclusion that Crockett and Greene possessed the requisite mental state was not mandated by the information available to him. It is possible to infer that in restraining Roe, Crockett and Greene did not intend to aid Shannon and Bostic--especially with the benefit of hindsight. For example, Hamlin knew that the alleged rape was not obvious to everyone in the room because Roe did not learn of the alleged rape until she and Doe had left the dorm room. However, we must address only whether Hamlin's conclusion was permissible under the circumstances. We find that it was. From the information available to Hamlin, it is certainly possible to infer that Crockett and Greene intended to aid the

discussing the allegations, Kersey drafted affidavits for the arrest of Shannon, Bostic, Crockett, and Greene, which Hamlin signed and Kersey notarized. The affidavits alleged that Crockett and Greene were "unlawfully acting with knowledge that Demetrius [sic] Shannon was intending and did forcibly rape an adult female, prevented other persons from coming to her aid and remained present during the rape actively preventing assistance." Hamlin gave the affidavits to another police officer, Rick Moseley, and then Hamlin escorted Doe and Roe to City Hall, where they provided written accounts of the incident. Moseley presented the affidavits to a Whitley County district judge, who issued warrants to arrest Shannon for first degree rape, Bostic for facilitation of a first degree rape, and Crockett and Greene for complicity in a first degree rape. Moseley gave the warrants to police officer E.J. Miller, who arrested Shannon, Bostic, Crockett, and Greene, and took the four students to the Whitley County Jail. Crockett and Greene remained there for ten days. Crockett and Greene were never indicted by a grand jury. Nevertheless, Cumberland suspended Crockett and Greene for one year, revoked their scholarships, and gave them failing grades in all their classes.

In response to their arrest, imprisonment, scholarship revocation, suspension, and receipt of failing grades, Crockett and Greene sued Cumberland College, Colegrove, the City, Hamlin, and Kersey.[2] The original complaint alleged seven counts: (1) deprivation of liberty without due process pursuant to § 1983; (2) deprivation of property without due process pursuant to § 1983; (3) false arrest and false imprisonment; (4) malicious prosecution; (5) abuse of process; (6) intentional infliction of emotional distress; and (7) defamation. Hamlin and the City moved for partial summary judgment on all counts except the defamation count. Although they raised several arguments in their initial brief,

_____

[2]An amended complaint was filed in the district court on February 1, 2001 adding Kersey as a defendant.

Hamlin and the City did not raise the qualified immunity defense until their reply brief. The district court granted summary judgment to Hamlin and the City on the malicious prosecution count but denied the remainder of their motion.

Hamlin and the City immediately appealed the denial of qualified immunity. In response, Crockett and Greene moved to dismiss the appeal, arguing that this Court had no jurisdiction to consider the denial of qualified immunity because that decision was not a final order. This Court denied Crockett and Greene's motion because the appeal presented clear issues of law. *See Crockett v. Cumberland Coll.*, No. 01-5306, Order (6th Cir. June 11, 2001).

Following the denial of the motion to dismiss, the parties briefed the substance of the appeal. Hamlin and the City argued that: (i) summary judgment was proper because probable cause existed to arrest Crockett and Greene; (ii) the qualified immunity determination does not depend on a jury's assessment of whether probable cause existed; (iii) Hamlin should have received qualified immunity because his conduct was objectively reasonable; and (iv) due to the established law of municipal liability under § 1983, the City is not liable. Crockett and Greene responded that (a) there is no interlocutory jurisdiction because Hamlin does not construe the material facts in the light most favorable to the plaintiffs; (b) there is no interlocutory jurisdiction because Hamlin asserts grounds for qualified immunity not presented to the district court; (c) there is no interlocutory jurisdiction over the City's appeal because it is not entitled to qualified immunity; and (d) even if there is interlocutory jurisdiction over Hamlin, he is not entitled to qualified immunity. We now consider the issues presented by the appeals lodged by Hamlin and the City.

result that is sufficient for the commission of the offense"). A person acts with the intentional mental state under Kentucky law, when "his conscious objective is to cause that result or to engage in that conduct." KY. REV. STAT. ANN. § 501.020(1).

Of course, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). In order to have probable cause to arrest Crockett and Greene, Hamlin reasonably had to believe that plaintiffs aided, counseled, or attempted to aid Shannon and Bostic in planning or committing the rape and that plaintiffs specifically intended to promote or facilitate the commission of the rape.

### 3. Whether Hamlin Arrested Crockett and Greene Without Probable Cause

We must evaluate whether Hamlin properly concluded that there was probable cause to arrest Crockett and Greene for complicity to commit rape at the time the arrest warrants were drafted. At this time, Hamlin had conducted several hours of investigation in which he personally interviewed the alleged victim, Doe, and an eyewitness, Roe. Hamlin had reviewed their versions of the events that had taken place earlier that evening numerous times. Hamlin also relied on reports from Cumberland officials. In addition, Hamlin consulted with the County Attorney, Kersey, who had himself interviewed Doe and Roe and who eventually drafted the affidavit that Hamlin signed. Hamlin had not interviewed Crockett or Greene; nor had Hamlin interviewed the others present in Bostic's dorm room at the time of the alleged rape. Hamlin also did not have the benefit of the written statements of Doe, Roe, Crockett or Greene, which were drafted later that night.

Hamlin's reliance on the statements of the victim and an eyewitness alone may be sufficient to establish probable cause. *See Ahlers*, 188 F.3d at 370 ("An eyewitness

This case implicates the "complicity to the act" prong of accomplice liability, and not the "complicity to the result" prong. As the Kentucky Supreme Court made clear in *Tharp*, "complicity to the act" applies when the principal actor's conduct constitutes the criminal offense. 40 S.W.3d at 360. Under the allegations here, Bostic, by holding Doe down, and Shannon, by raping her, intentionally engaged in conduct that constitutes a criminal offense. Thus, if Crockett and Greene were accomplices, their liability would be premised directly on Shannon and Bostic's conduct. There is no basis for applying the "complicity to the result" prong here. Under Kentucky law, "complicity to the result" occurs when an unintended consequence of a person's actions constitutes a criminal offense. *See* KY. REV. STAT. ANN. § 502.020 cmt.; *see also Tharp*, 40 S.W.3d at 360-61. Because there were no unintended consequences associated with the rape and facilitation of the rape here, there could be no basis for holding Crockett and Greene liable under a "complicity in the result" theory.

Accomplice liability for rape under "complicity to the act" prong, requires proof that the defendant engaged in one of three forms of conduct: (a) the solicitation, command, or conspiracy with another person to commit rape; (b) the aiding, counseling, or attempt to aid such person in planning or committing the rape; or (c) the failure to make a proper effort to prevent the rape where the person has the legal duty to prevent the rape. *See* KY. REV. STAT. ANN. §§ 502.020(1) & 510.040(1)(a) (Banks-Baldwin 2002). Additionally, "complicity to the act" accomplice liability, unlike "complicity in the result" liability, requires specific intent. *Compare* KY. REV. STAT. ANN. § 502.020(1) (requiring action with "the intention of promoting or facilitating the commission of the offense"), *and* KY. REV. STAT. ANN. § 502.020 cmt. ("To be guilty under subsection (1) for a crime committed by another, a defendant must have specifically intended to promote or facilitate the commission of that offense."), *with* KY. REV. STAT. ANN. § 502.020(2) (requiring only action "with the kind of culpability with respect to the

## II. Interlocutory Appellate Jurisdiction

We must first assess whether we have jurisdiction to consider the issues raised on this interlocutory appeal by Hamlin and the City. *See Frantz v. Village of Bradford*, 245 F.3d 869, 871 (6th Cir. 2001). Essentially, Hamlin appeals the district court's order denying him qualified immunity with regard to the plaintiffs' allegation, pursuant to § 1983, that Hamlin deprived Crockett and Greene of their liberty without due process when he arrested and jailed them for complicity in the rape of Doe without probable cause. The City argues for the first time on appeal that, under the principles governing § 1983 municipal liability, it did not deprive Crockett and Greene of their liberty without due process. We find that this Court has jurisdiction over Hamlin's interlocutory appeal pursuant to the collateral order doctrine. However, we find that jurisdiction over the City's appeal under that doctrine or under the doctrine of pendent jurisdiction would be improper. Accordingly, we will address the merits of Hamlin's qualified immunity claim only.

Appellate courts generally only have jurisdiction over the final decisions of district courts. *See* 28 U.S.C. § 1291. However, under the collateral order doctrine, an order issued before the conclusion of the district court proceedings may be considered a final order and, therefore, immediately appealable. *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *see* 28 U.S.C. § 1292. Under this doctrine, an order is immediately appealable if the order: (1) conclusively determined the disputed question; (2) resolved an important issue completely separate from the merits of the action; and (3) would be effectively unreviewable on appeal from a final judgment. *Johnson*, 515 U.S. at 309; *Cohen v. Beneficial Life Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949).

### A.  Hamlin's Appeal of the Denial of Qualified Immunity

Under this doctrine, a denial of summary judgment based on a legal determination that qualified immunity is inappropriate is immediately appealable as a collateral order. *See Mitchell v. Forsyth*, 472 U.S. 511, 526-28, 530 (1985); *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 525 (6th Cir. 2002).  To the extent that a denial of summary judgment finding qualified immunity inappropriate is based upon the district court's determination that a genuine issue of material fact exists, the decision will not be immediately appealable.  *See Johnson*, 515 U.S. at 313; *see Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 536-37 (6th Cir. 2002); *Skousen*, 305 F.3d at 525; *Turner v. Scott*, 119 F.3d 425, 427 (6th Cir. 1997).  In the present case, the district court did not find that a genuine dispute of material fact precluded summary judgment on the issue of qualified immunity.

In reviewing the denial of qualified immunity, we must accept the undisputed facts and view the evidence in the light most favorable to the plaintiffs.  *Klein v. Long*, 275 F.3d 544, 549 (6th Cir. 2001); *cf. Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998).  We review questions of law *de novo*. *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1997).

### B.  City's Appeal of Municipal Liability

Because the City failed to raise the issue of municipal liability in the district court, the City's interlocutory appeal of this issue is inappropriate.  Moreover, even if the City had raised the issue of municipal liability at the district court level and the district court had rejected that argument, this Court would not have jurisdiction over such an appeal under the collateral order doctrine.  *See Cohen*, 337 U.S. at 545-46; *see also Johnson*, 515 U.S. at 310.  Although the first two requirements would be satisfied--determining the question of municipal liability would conclusively determine the City's

Once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect.  *See Klein*, 275 F.3d at 551 ("But once a police officer *has* sufficient probable cause to arrest, he need not investigate further."); *Ahlers*, 188 F.3d at 371 ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused."); *Criss*, 867 F.2d at 263 ("A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").

In the § 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible.  *Pyles*, 60 F.3d at 1215; *see also Fridley*, 291 F.3d at 872; *Klein*, 275 F.3d at 550; *Gardenhire*, 205 F.3d at 315.

### 2.  Elements of Complicity to Commit Rape under Kentucky Law

Crockett and Greene were arrested for the offense of complicity in a first degree rape.  Under Kentucky law, first degree rape of persons capable of consent is defined as "sexual intercourse with another person by forcible compulsion."  KY. REV. STAT. ANN. § 510.040(1)(a) (Banks-Baldwin 2002).  Kentucky Revised Statute § 502.020 provides two "separate and distinct theories" under which a person may be an accomplice to a crime: "'complicity to the act' under subsection (1) of the statute, which applies when the principal actor's *conduct* constitutes the criminal offense, and 'complicity to the result' under subsection (2) of the statute, which applies when the *result* of the principal's conduct constitutes the criminal offense."  *Tharp v. Commonwealth*, 40 S.W.3d 356, 360 (Ky. 2001); *see also* KY. REV. STAT. ANN. § 502.020(1) & (2) (Banks-Baldwin 2002).

Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.") (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)).

For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002); *Klein*, 275 F.3d at 550; *Donovan*, 105 F.3d at 298. "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988); *see also United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) ("The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty.").

The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*" *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *see also Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact."); *Klein*, 275 F.3d at 550 ("Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]'"); *Gardenhire*, 205 F.3d at 315; *Strickland*, 144 F.3d at 415 ("[T]he Fourth Amendment does not require that a police officer *know* a crime occurred at the time the officer arrests or searches a suspect.").

liability and would not affect any other issue in the case--the City would not be able to satisfy the third element as this Court could effectively review the question of municipal liability after the district court rendered a final judgment.

The City also contends that we have jurisdiction over its appeal under principles of pendent appellate jurisdiction. Citing *Mattox v. City of Forest Park*, the City argues that on interlocutory appeal, where a municipality's right to summary judgment is "inextricably intertwined" with a qualified immunity analysis, a court may exercise pendent appellate jurisdiction over the municipality's argument. 183 F.3d 515, 523-24 (6th Cir. 1999); *see also Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995). While the City accurately recites the pendent appellate jurisdiction doctrine, its argument ultimately fails. Hamlin's appeal challenges the denial of qualified immunity, which turns on whether there was probable cause for the arrest of the plaintiffs, while the City argues that there was no municipal custom or policy that could form the basis for its § 1983 liability here. Although Hamlin's appeal and the City's appeal overlap in some respects, the two appeals are not "inextricably intertwined" because resolution of Hamlin's interlocutory appeal of the probable cause issue does not necessarily resolve the City's interlocutory appeal of the municipal policy or custom requirement. *See Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995) ("[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal--that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well."). For that reason, we reject the application of pendent appellate jurisdiction to the City's appeal. Because neither of the City's bases for appellate jurisdiction, the collateral order doctrine or pendent appellate jurisdiction, apply here, we are without jurisdiction to consider the merits of the City's municipal liability defense and we dismiss the City's appeal.

### III.  Qualified Immunity

In civil suits pursuant to 42 U.S.C. § 1983 for money damages, qualified immunity protects a public official from being sued as long as the official "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is not a defense to liability; where it is applicable, its purpose is to shield the official from suit altogether, saving the official from the burdens of discovery and costs of trial. *See Mitchell*, 472 U.S. at 526 (explaining that qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").  Qualified immunity is intended to serve the public interest by permitting officials to take action "'with independence and without fear of consequences.'" *Harlow*, 457 U.S. at 819 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

The Supreme Court has established a two-part analysis for assessing whether a public official is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir. 2001).  First, we must inquire whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show that the public official's conduct violated a constitutional right. *Saucier*, 533 U.S. at 200. Second, if the denial of a constitutional right is demonstrated, we must assess whether that right was clearly established at the time of the alleged violation. *Id.*  The second inquiry requires a determination that the right was so clearly established that a reasonable official would understand that the particular conduct at issue violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### A.  Whether Hamlin Deprived Crockett and Greene of a Constitutional Right

We first address whether the plaintiffs have alleged facts that, viewed in the light most favorable to them, demonstrate that the defendant's conduct violated their constitutional rights.  The federal constitutional right implicated here is the Fourth Amendment right to be arrested only upon probable cause. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997). Thus, we must address whether the evidence, when construed most favorably to Crockett and Greene, states a claim that Hamlin arrested them without probable cause. *Pyles*, 60 F.3d at 1215 (explaining § 1983 claim for wrongful arrest turns on whether officer had probable cause under the Fourth Amendment).

On appeal, Hamlin argues that probable cause existed for arresting Crockett and Greene and, for that reason, plaintiffs cannot show the deprivation of any federal right.  Crockett and Greene reply that Hamlin's investigation was not thorough enough to establish probable cause.  In support of their argument, they rely heavily on the fact that Hamlin did not interview them before he arrested them.  After balancing these arguments, we conclude that probable cause to arrest Crockett and Greene existed.

### 1.  Probable Cause Requirement

The Fourth Amendment states in pertinent part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  Today it is well established that any arrest without probable cause violates the Fourth Amendment. *See Klein*, 275 F.3d at 550; *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999); *see also Baker v. McCollan*, 443 U.S. 137, 142-43 (1979) ("By virtue of its 'incorporation' into the