Andrea C. KEYES, Plaintiff–Appellant,

v.

Scott ERVIN, City of Athens, Tennessee, and Chuck Ziegler, Defendants–Appellees.

No. 02–5509.

United States Court of Appeals, Sixth Circuit.

Feb. 25, 2004.

John E. Eldridge, Robert R. Kurtz, Eldridge, Irvine & Gaines, Knoxville, TN, for Plaintiff–Appellant.

Robert H. Watson, Jr., Nathan D. Rowell, Watson & Hollow, Knoxville, TN, for Defendants–Appellees.

Before SILER and GILMAN, Circuit Judges; and BUNNING, District Judge.*

OPINION

BUNNING, District Judge.

On December 6, 1999, Defendant–Appellee, Scott Ervin, then an Officer with the City of Athens, Tennessee (the "City") Police Department, arrested Plaintiff–Appellant, Andrea C. Keyes, for driving while under the influence of an intoxicant in violation of Tennessee state law. Keyes thereafter sought relief in federal court from Officer Ervin, Police Chief Chuck Ziegler, and the City under 42 U.S.C. § 1983 for an alleged violation of her Fourth Amendment right to be free from

---

\* The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

arrest without probable cause. Following discovery, Keyes and Defendants filed cross motions for summary judgment with the district court.[1] The district court granted summary judgment in favor of Defendant–Appellee Ervin on the § 1983 claim, and consequently denied Plaintiff–Appellant Keyes' summary judgment motion. Keyes timely appealed these district court rulings on summary judgment, arguing that more than one conclusion on whether probable cause existed is reasonable, thereby precluding summary judgment in favor of Appellee Ervin. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment in favor of Appellee Ervin.

## I. BACKGROUND

At approximately 6:00 p.m. on December 6, 1999, Plaintiff–Appellant Keyes was operating a motor vehicle on Congress Parkway in Athens, Tennessee, when her car rear-ended another motor vehicle stopped in front of her. As for her recollection of the accident. Keyes testified she last remembered merging onto Congress Parkway, then "w[o]ke up hurting." Keyes could offer no explanation for the accident. She acknowledged she does not have "those couple of moments of recall."

Defendant–Appellee Ervin, a police officer employed by the City of Athens, Tennessee, was dispatched to the scene. Upon arrival he approached Keyes' vehicle. She appeared to be unconscious and he "was unable to get a response out of her." He attempted to rouse Keyes by shaking her and rubbing her shoulder but

"was unable to get her to come to." Her head was leaned back and her eyes were closed. Ervin testified he had never encountered a situation where he arrived on a scene and an individual completely failed to respond to stimuli. After checking on and speaking with the other driver involved in the accident, Ervin returned to Keyes and observed she was still unconscious. He noticed she then started to come to as the ambulance personnel were loading her into the emergency vehicle.

Keyes admitted she did not recall seeing Ervin at her car, but that it was possible he was there. Keyes testified that she recalled someone banging on the window of her car and that this person, who she thought was an EMT, was trying to get her attention. She acknowledged she did not initially answer, and testified she did not do so because she was winded and her chest hurt from the accident.

Keyes was taken by ambulance to the emergency room (ER) of a local hospital, where she was attended to by Dr. Gerald Mazza. According to the ER records, Keyes told the ER personnel that "she thinks she fell asleep due to her meds." Keyes disputes the accuracy of this statement as listed on the report. During her discovery deposition, she testified that to her knowledge she did not lose consciousness at any time, but also testified that she told the doctor that she did not know whether she had passed out or fallen asleep, because she does not know what happened. She explained that the statement listed on the ER report is in error,

1. The City of Athens, Tennessee, Police Chief Chuck Ziegler, and Officer Scott Ervin were all named as Defendants in the district court action. However, arresting officer Scott Ervin was the only Defendant–Appellee who filed a brief. In it, he states that Appellant agreed that both Chief Ziegler and the City were entitled to summary judgment. The district court opinion notes only that Appellant concedes summary judgment is appropriate as to the City; therefore, whether Appellant agrees that Chief Ziegler is also entitled to summary judgment is unclear. Regardless, all remaining claims turn upon whether Appellee Ervin had probable cause to arrest Appellant Keyes.

as she was merely asking the ER physician questions about whether she had perhaps passed out, fallen asleep, or lost consciousness.

Keyes claims she was "wildly guessing" that her new medications may have caused her to fall asleep. Keyes acknowledged she told the ER technicians, nurses, doctors and Ervin she was on several new medications at the time of the accident.

Ervin interviewed Keyes at the ER about 30 minutes after the accident. He testified Keyes told him that the "[l]ast thing she remembered was starting to turn off of Decatur Pike onto Congress Parkway and then she blacked out and the next thing she remembered was waking up in the hospital." Ervin testified Keyes said she was taking several prescription medications, including OxyContin, which she had last taken the morning of the accident, and that her doctors had just changed her medications.

Ervin thereafter interviewed Dr. Gerald Mazza, the ER doctor attending to Keyes. He asked Dr. Mazza whether OxyContin or the other medications Keyes had listed could "alter perception" or cause someone to be impaired. Dr. Mazza told him Oxy-Contin can "dull the senses" and cause impairment. Ervin testified he told Dr. Mazza that Keyes reported to him she had blacked out behind the wheel, and that Dr. Mazza responded by stating "[t]hat's what I was told."

Ervin acknowledged that Dr. Mazza told him Keyes did not appear to him to be intoxicated. Ervin likewise stated he never observed anything with Keyes while she was at the ER that lead him to believe she was impaired, but did observe that she was unconscious in her vehicle at the scene.

After speaking with Dr. Mazza, Ervin placed Keyes under arrest for driving under the influence of an intoxicant. A blood test subsequently revealed no presence of alcohol or illegal drugs. The charges brought against Keyes were later dismissed.

Keyes filed a *pro se* complaint against Officer Ervin on December 4, 2000, in the United States District Court for the Eastern District of Tennessee. Shortly thereafter Keyes obtained counsel, who filed an amended complaint against Officer Ervin, Police Chief Chuck Ziegler, and the City. Cross motions for summary judgment were filed following discovery. By Order dated March 19, 2002, the district court denied Keyes' motion and granted Ervin's motion. In its Memorandum Opinion, the district court concluded summary judgment in favor of Ervin was proper because a reasonable person would believe Keyes blacked out while driving due to her prescription medications and therefore had committed the strict liability crime of driving under the influence of an intoxicant. As this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, we now consider the issues presented by Keyes' appeal.

## II. OVERVIEW OF GOVERNING LAW

### A. Standard of Review

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Appellate courts conduct a *de novo* review of district court summary judgment awards. *Mitchell v. Chapman,* 343 F.3d 811, 818 (6th Cir.2003). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## B. Unlawful Arrest Claims Under 42 U.S.C. § 1983

If an individual alleges a violation of the Fourth Amendment for an arrest without probable cause, he may seek recourse under 42 U.S.C. § 1983. "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1262, 154 L.Ed.2d 1024 (2003). When a lack of probable cause is the underlying issue in a § 1983 claim, this Court has stated that "the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible." *Crockett v. Cumberland College,* 316 F.3d 571, 581 (6th Cir.2003); *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995).

### 1. Elements of Driving Under the Influence of an Intoxicant under Tennessee Law

In Tennessee, a police officer may make a warrantless arrest of one [w]ho is the driver of a vehicle involved in a traffic accident either at the scene of the accident or up to four (4) hours after such driver has been transported to a health care facility, if emergency medical treatment for such driver is required and the officer has probable cause to believe that such driver has violated § 55–10–401[.] Tenn.Code Ann. § 40–7–103(8) (2003).[2] Thus, an officer may make a warrantless arrest of an individual involved in a traffic accident if the officer has probable cause to believe the individual has violated section 55–10–401 of the Tennessee Code, the State's "DUI" statute. That statute reads:

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, ... or any other premises which is generally frequently by the public at large, while (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system[.]

Tenn.Code Ann. § 55–10–401(a)(1). Driving under the influence of an intoxicant is considered a strict liability offense by the State of Tennessee. *State v. Kain,* 24 S.W.3d 816, 818 (Tenn.Crim.App.2000).

### 2. Probable Cause Requirement

Under Tennessee law, probable cause exists when, "the facts and circumstances within the officer's knowledge at the time of the arrest, and of which the officer 'had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *State v. Henning,* 975 S.W.2d 290, 300 (Tenn. 1998) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). All of the information in the officer's possession, fair inferences therefrom, and observations. including past experience, are generally pertinent to determine if an officer has probable cause to arrest. *Greer v. State,* 1 Tenn.Crim.App. 407, 443 S.W.2d 681, 684, *cert. denied.* (Tenn.1969).

The Tennessee standard is grounded in United States Supreme Court precedent, and provides a broad and flexible standard for law enforcement in providing protection to the public. As the Supreme Court explained in *Draper v. United States,* "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

---

**2.** This subsection of the statute was also in effect in 1999, when Appellant was arrested.

*Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Sixth Circuit pronouncements follow this standard and continue to reinforce it. *See Painter v. Robinson,* 185 F.3d 557, 569 (6th Cir.1999) (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (" 'Probable cause' denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' "))).

In *Crockett v. Cumberland College,* 316 F.3d 571 (6th Cir.2003), this Court stated:

> The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest." Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir.1999); *see also Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed ... after the fact."); *Klein [v. Long,* 275 F.3d 544,] at 550 [(6th Cir. 2001)] ("Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]' "); *Gardenhire [v. Schubert,]* 205 F.3d [303,] at 315 [(6th Cir.2000)]; *[United States v.] Strickland,* 144 F.3d [412,] at 415 [(6th Cir.1998)] ("[T]he Fourth Amendment does not require that a police officer *know* a crime occurred at the time the officer arrests or searches a suspect.").

Once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect. *See Klein,* 275 F.3d at 551 ("But once a police officer *has* sufficient probable cause to arrest, he need not investigate further."); *Ahlers [v. Schebil,]* 188 F.3d [365,] at 371 [(6th Cir.1999)] ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused."); *Criss [v. City of Kent,]* 867 F.2d [259,] at 263 [(6th Cir.1988)] ("A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").

*Crockett,* 316 F.3d at 580–81 (6th Cir.2003). Thus, the review of whether probable cause sufficient to make a lawful arrest existed is limited to only those factual circumstances known to the officer at the time of the arrest. However, this review of the totality of the circumstances includes *all* facts known to the officer at the time, both inculpatory and exculpatory. *Gardenhire v. Schubert,* 205 F.3d 303, 318 (6th Cir.2000) ("[I]n obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest.").

### III. APPLICATION OF GOVERNING LAW;

#### Was Keyes Arrested Without Probable Cause

The lower court, in granting summary judgment to Appellee Ervin, determined

that probable cause existed as a matter of law. The district court based its determination on four pieces of evidence: (1) Keyes did not respond to Ervin's attempts to rouse her; (2) Keyes told Ervin she had taken OxyContin and several other prescription medicines earlier on the day of the accident; (3) according to the conversation Ervin had with the ER physician, OxyContin could dull the senses and cause impairment; and, (4) according to the information provided to Ervin by both Keyes and the ER physician, Keyes blacked out sometime before the accident. As Keyes challenges the merits of these facts and their sufficiency to support a finding of probable cause, this Court considers each of the reasons articulated by the district court, as well as any other relevant facts in the record.

## A. Keyes' Failure to Respond

■ Ervin testified that upon responding to the accident, Keyes appeared to be unconscious and although he attempted to rouse her by shaking her and rubbing her shoulder, she would not respond. He testified that in his experience, he had never encountered such a situation wherein an individual had completely failed to respond to stimuli. Tennessee law allows for an officer's past experiences to be considered in sizing up whether probable cause exists to make an arrest. *State v. Evetts*, 670 S.W.2d 640, 642 (Tenn.Crim.App.1984) (holding that an officer with eighteen and a half years of experience and who had made over 1,000 DUI arrests could use his experience to assist in determining probable cause; probable cause existed to arrest for driving under the influence where the officer came upon scene of an accident caused by defendant, who smelled of alcohol, though the driver did not exhibit outward signs of intoxication).

■ Given the past experience of Ervin in dealing with individuals who were not in fully conscious states, and his ability to awaken them with stimuli, it was reasonable for Ervin to conclude Keyes was in fact unconscious at the scene of a rear-end accident that appeared to be her fault. This observation and deduction by Ervin was one of the first indicators raising a suspicion that Keyes might have been operating under the influence at the time of the accident. Moreover, a careful review of Keyes' testimony reflects that she cannot dispute this observation made by Ervin. Keyes testified that although she does not personally recall it, she could not dispute that Ervin approached her car. What she recalled at the scene was someone she thought was an EMT banging on the window to get her attention. Ervin testified that the EMTs started administering care to Keyes *after* he had initially approached her and found her to be unconscious. Moreover, Keyes' explanation as to *why* she did not initially respond to the knock on her window is not so much relevant to the probable cause consideration as the undisputed fact that she *did not* respond, confirming at least outwardly Ervin's suspicions about her level of consciousness.

## B. Keyes' Admission to Taking OxyContin and Other Prescription Medications the Day of the Accident

The district court also pointed out that Ervin had considered and relied upon information that Keyes had taken OxyContin and several other prescription medications on the date of the accident as further support for probable cause. It is undisputed that Keyes told Officer Ervin she had taken several medications, including OxyContin, on the morning of the accident. Keyes does not deny reporting that her doctors had just changed her medications.

■ OxyContin is the trade name for "oxycodone," a narcotic opium derivative and Schedule II controlled substance under Tennessee law. *See* Tenn.Code Ann. § 39–17–408(b)(1)(N). Ervin testified that he has had situations involving OxyContin in his experience in law enforcement, and is generally aware that it is a narcotic substance used to control pain. This undisputed fact also would have been of some significance to Ervin in his investigation. More specifically, the information available to him at this point was not only that Keyes was unconscious at the scene, but also that she had been taking several prescription medications, including a narcotic drug. It is reasonable to conclude that information that a driver suspected of driving under the influence was taking narcotics, as compared with someone who was not on prescription medication, would be of some relevance to an investigating officer. Moreover, the fact that Keyes may have ingested drugs lawfully prescribed to her by a physician would not impact Ervin's investigation of possible driving under the influence. Under Tennessee law, driving under the influence of an intoxicant is a strict liability crime; using prescribed medications as directed cannot be used as a defense. Tenn.Code Ann. § 55–10–402; *State v. Kain,* 24 S.W.3d 816, 818 (Tenn. Crim.App.2000); *State v. Fletcher,* 1997 WL 379160, at *3 (Tenn.Crim.App.1997).

## C. The ER Physician's Opinion that OxyContin Could Alter Perception, Dull the Senses, and Cause Impairment

The district court also noted the opinion given to Ervin by Dr. Mazza that OxyContin could alter perception, dull the senses, and cause impairment. This fact is undisputed by Keyes and contributed to the totality of information available to or complied by Ervin. Ervin did not rely solely upon his personal suspicions about the

drug in assessing whether it could have impacted Keyes' functional capacity. Rather, his suspicions about the effects of OxyContin upon one's ability to function, namely perceive and react, were confirmed by a third-party medical professional. It was reasonable for Ervin to rely upon an opinion from a physician in formulating judgment as to probable cause. A police officer may also base probable cause upon information from a reliable informant whose information is credible *Cf. State v. Lewis,* 36 S.W.3d 88, 98 (Tenn.Crim.App. 2000) (holding that if information contributing to the existence of probable cause for a warrantless arrest has been gathered from an ordinary citizen, no showing of the informant's basis of knowledge and veracity is required). The information that Ervin received from Dr. Mazza is similar to that of an informant and was permissibly used by Ervin as another of the facts leading him to conclude that there was probable cause to arrest.

## D. Keyes' Statement that She "Blacked Out" Prior to the Accident

The fourth and final factor that the district court noted as being used by Ervin to find probable cause was information that Keyes had blacked out prior to the accident. This fact was known to Ervin from two sources. First, he testified that Keyes told him that the "[l]ast thing she remembered was starting to turn off of Decatur Pike onto Congress Parkway and then she blacked out and the next thing she remembered was waking up in the hospital." Second, Ervin testified that when he told Dr. Mazza that Keyes reported to him she blacked out behind the wheel, Dr. Mazza responded that this is what he was told as well.

## E. Other Factors in the Probable Cause Analysis

On appeal, Keyes contends the district court's error in granting summary judg-

ment resulted from its failure to recognize that more than one conclusion on probable cause was reasonable based on the facts of the situation, and so a jury question was created. However, the factors looked at by the district court, and as examined by this Court above, all support a finding of probable cause. Keyes nevertheless correctly insists that probable cause analysis requires Officer Ervin to also examine any exculpatory evidence. An officer may not look solely to the facts that lead to an inference of guilt or potential to commit a crime, but must also consider factors that would show innocence. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000) (noting that, in obtaining reliable information to warrant probable cause and a subsequent arrest, an officer cannot look only at the evidence of guilt while ignoring exculpatory evidence). The only exculpatory evidence Ervin was required to consider, though, was that available to him at the time. He had no obligation to actively pursue evidence seeking to exculpate Keyes. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988)(policeman not required to credit suspect's story nor forego arrest pending further investigation of suspect's story).

As for claimed exculpatory evidence, Keyes emphasizes that while at the ER she never appeared to be intoxicated nor did she exhibit any signs of intoxication in Ervin's or Dr. Mazza's presence. Nevertheless, she did appear to Ervin to be unconscious at the scene of the accident. Moreover, Keyes was suspected of being under the influence of a narcotic drug, not alcohol. Keyes has not pointed to any evidence of record suggesting that the "influence" of narcotic drugs manifests itself in the same motor coordination, slurred speech, etc. manner commonly associated with alcohol intoxication, or that if it does, that Ervin was either already aware of this fact or there was exculpatory evidence to

this effect available to him at the time he made the arrest.

Keyes also vehemently disputes the conclusion that she blacked out prior to the accident. But for purposes of her § 1983 claim, the relevant consideration is not what she genuinely believes or speculates was the circumstance in hindsight or during a subsequent discovery deposition, but instead what was occurring and what information was being conveyed to Ervin *at the time*. For example, Keyes does not dispute that the words themselves "she thinks she fell asleep due to her meds" appear on the ER report. But she disputes the accuracy of these words, protesting that her statements were misinterpreted by medical personnel, because she was merely raising questions about *whether* she had perhaps passed out, fallen asleep, or lost consciousness. Nevertheless, she does not challenge that Dr. Mazza told Ervin this or that Ervin may have thought she said she blacked out, even if based on a mistaken belief or understanding. Even viewing her testimony in the light most favorable to her reveals that while she is unwilling to definitively state she "blacked out," she herself questioned whether she had passed out or fallen asleep prior to the accident. Thus, regardless of whether, as Keyes describes it, she was "wildly guessing" or not, Keyes admits that when discussing how the accident could have happened, she questioned if her new medications may have caused her to fall asleep. Therefore, given the circumstances *as they were presented to Ervin at the time*, it was not unreasonable for him to believe Keyes had blacked out, passed out, or fallen asleep immediately prior to the accident due to the influence of a narcotic drug.

Keyes insists that this Court has reversed findings of probable cause in § 1983 cases where the actions of an indi-

vidual may appear to establish probable cause but where more than one conclusion is reasonable, *Diamond v. Howd,* 288 F.3d 932, 937 (6th Cir.2002) (determining that, though defendant's characteristics were also characteristics of inebriation, this did not compel a determination of inebriation given additional factual information of emotional distress due to a domestic dispute with husband), and that hers is such a case. In § 1983 actions where a determination of probable cause is the issue, a jury question is presented unless there is but one determination reasonably possible. *Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001). But the key consideration, and one that must be done on a case-by-case basis, is not whether more than one conclusion is *possible,* but whether more than one conclusion is *reasonably* possible.

In considering "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), based upon the information available to Ervin prior to arrest, as described above, reasonable minds would not differ on whether Ervin had probable cause to arrest Appellant Keyes. In order for the nonmoving party to survive a motion for summary judgment, there must be a *genuine* dispute of a *material* fact such that a trier of fact could return a verdict for the nonmovant. *Rodgers v. Monumental Life Ins. Co.,* 289 F.3d 442, 448 (6th Cir.2002). Facts are material for purposes of summary judgment proceedings only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* As discussed at length above, each of the factors reviewed by the trial court supports a probable cause finding. The facts pointed out by Keyes as exculpatory and contradicting these factors, including whether she definitively stated that she "blacked out," are not material ones under the probable cause standard applicable in this Circuit. They fail to suggest that more than one conclusion as to probable cause was *reasonably* possible.

## IV. CONCLUSION

For the reasons set forth above, the district court's denial of summary judgment to Keyes and grant of summary judgment to Ervin is **AFFIRMED.**