qualified immunity and we **REMAND** for proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0434P (6th Cir.)
File Name: 01a0434p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DAVID B. KLEIN,
      *Plaintiff-Appellee,*

    *v.*

PAUL LONG, Blackman
Township Police Officer;
PHILLIP ROGERS, Blackman
Township Police Sergeant,
    *Defendants-Appellants.*

No. 00-2235

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-74686—Arthur J. Tarnow, District Judge.

Argued: September 21, 2001

Decided and Filed: December 21, 2001

Before: NELSON and MOORE, Circuit Judges; KATZ,
District Judge.

———————

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**COUNSEL**

———————————

**ARGUED:** Ernest R. Bazzana, PLUNKETT & COONEY, Detroit, Michigan, for Appellants. Frank G. Becker, FRANK G. BECKER & ASSOCIATES, Southfield, Michigan, for Appellee. **ON BRIEF:** Mary Massaron Ross, PLUNKETT & COONEY, Detroit, Michigan, for Appellants. Frank G. Becker, FRANK G. BECKER & ASSOCIATES, Southfield, Michigan, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellee David B. Klein was arrested on June 10, 1998 for nonaggravated, domestic assault. Alleging that he was arrested without probable cause in violation of his Fourth and Fourteenth Amendment rights, Klein brought suit under 42 U.S.C. § 1983 against Defendants-Appellants Paul Long, a police officer, and Phillip Rogers, a police sergeant, of Blackman Township, Michigan. The defendants moved for summary judgment, and, after a hearing, the district court denied the motion and a subsequent motion for reconsideration/rehearing, effectively finding that the defendants were not protected from suit by qualified immunity. For the following reasons, we **REVERSE** the judgment of the district court denying qualified immunity as to both Long and Rogers.

## I. BACKGROUND

On the evening of June 10, 1998, David Klein argued with his wife, Therese Klein, about her disciplining of their twelve-year old son, Matthew, for fighting with his fourteen-year old brother, Jeffrey, over the television remote control. After a tense dinner, the Kleins retired to the family room, where Mr. and Mrs. Klein further argued about a trip to Florida planned

calling the police, allegations bolstered by her bleeding finger. Any defense that Mr. Klein could have provided under the circumstances would not have warranted further investigation by the defendants. "[L]aw enforcement is under no obligation to give any credence to a suspect's story . . . nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Ahlers*, 188 F.3d at 371 (internal quotations omitted).

Furthermore, in a recent unpublished opinion, *Scott v. City of Bexley*, No. 00-3193, 2001 WL 599711 (6th Cir. May 24, 2001), we held that police officers had probable cause to arrest in a similar domestic violence situation. The police in that case responded to a 911 "domestic call" and found "the plaintiff [Scott] on the porch, pounding on the door." *Scott*, 2001 WL 599711 at *1 (internal quotations omitted). In the 911 call, the victim, Scott's former girlfriend, stated that Scott was pounding on her door, that she knew he had access to a gun, and that she feared he might fire the gun or break down her door. *Id*. at *3. When the police arrived at the victim's house, they questioned her, but they did not question Scott. Solely on the basis of the 911 call and the interview with the victim, the police then arrested Scott. We held that "the undisputed facts support a finding of probable cause." *Id*. at *4.

In sum, we conclude that Long and Rogers had probable cause to arrest Klein and that they therefore did not violate Klein's constitutional rights. We need not reach, then, the second part of the qualified immunity analysis delineated in *Saucier* — whether the constitutional right violated was clearly established. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 121 S. Ct. at 2156.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court as to both Long and Rogers on the basis of

recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire*, 205 F.3d at 318 (emphasis in original). In that case, as in *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999), we held that police officers did not have probable cause to arrest where they did not take into account known exculpatory evidence in their assessment of probable cause. But once a police officer *has* sufficient probable cause to arrest, he need not investigate further. We noted in *Gardenhire* that "the jury will have to analyze the probable cause question in light of *when* they conclude that the arrest occurred, because the factors in the probable cause determination shifted as the day went on. As the police officers gathered more facts about the alleged crime, the totality of the circumstances changed." *Gardenhire*, 205 F.3d at 318 (emphasis in original). Thus, to have probable cause to arrest, a police officer must take into account all the evidence — both inculpatory and exculpatory — that he has at the time of the arrest. Where the police have sufficient inculpatory evidence to give rise to a determination of probable cause and they do not know of any exculpatory evidence, we have held that "the failure to make a further investigation does not negate probable cause." *Coogan v. City of Wixom*, 820 F.2d 170, 173 (6th Cir. 1987) (internal quotation omitted); *see also Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988).

In this case, had the defendants questioned Klein, he would only have been able to defend himself by saying that he had not assaulted his wife or that he had not intended to assault his wife. Because Mrs. Klein and the children were the only eyewitnesses to Mr. Klein's conduct and because at least Mrs. Klein was claiming that Mr. Klein had assaulted her, further investigation could not have produced any exculpatory evidence for Mr. Klein. We held in *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999), that a victim's accusation that she had been sexually assaulted by the plaintiff, standing alone, was sufficient to establish probable cause. Mrs. Klein told the police that her husband had been "grabbing and pushing" her and the children and had prevented her from

for the upcoming weekend; Mr. Klein's voice was raised "a few octaves," and Mrs. Klein was crying. Joint Appendix ("J.A.") at 51 (David Klein Dep.). The argument escalated when Mrs. Klein instructed Matthew to go upstairs to take a shower, and Mr. Klein, disagreeing with this instruction, "put [his] hands firmly on [Matthew's] shoulders and sat him back down on the couch." J.A. at 55 (David Klein Dep.). Mrs. Klein then went into the kitchen to make a phone call. According to Mrs. Klein, she planned to call the police. J.A. at 254 (Therese Klein Dep.). Mr. Klein testified, however, that he thought Mrs. Klein was going to call a friend to talk about the argument, and "want[ing] the matter kept private," he followed Mrs. Klein into the kitchen and "grabbed the phone from her," causing her finger to be scratched. J.A. at 60-61, 95-96 (David Klein Dep.). After this incident, Mrs. Klein left the house, drove to the highway, and called 911 from her cell phone. J.A. at 255 (Therese Klein Dep.). Mrs. Klein testified that she was crying during the call and that she told the 911 operator that Mr. Klein had been "grabbing and pushing" her and the children. J.A. at 255-56 (Therese Klein Dep.). The dispatcher sent out a "domestic call," and both Long and Rogers responded. J.A. at 305 (Rogers Dep.).

Long and Rogers met a visibly upset Mrs. Klein in front of the house, and immediately noticed that her finger was bleeding. J.A. at 306-07 (Rogers Dep.). After questioning Mrs. Klein about what had happened and how her finger was cut, the officers followed her into the house where they found Mr. Klein doing dishes with Jeffrey. Mr. Klein was asked to wait in the garage while Rogers further questioned Mrs. Klein and also questioned the children. According to Mrs. Klein, she reiterated to Rogers what she had told the 911 operator: Mr. Klein was grabbing and pushing her and the children, he had prevented her from calling the police, and, while taking the phone from her, he had cut her finger. J.A. at 254-57 (Therese Klein Dep.). In addition, Mrs. Klein testified that she told the police that her husband "just needed to leave the premises for the evening and cool down." J.A. at 257 (Therese Klein Dep.). Following these interviews, Rogers placed Mr. Klein under arrest for nonaggravated, domestic

assault, handcuffed him, and drove him to the Jackson County Jail, where he was detained for twenty hours.[1]  The Jackson County prosecutor chose not to prosecute Mr. Klein for domestic assault.

On October 29, 1998, Klein brought suit against Long and Rogers in the United States District Court for the Eastern District of Michigan under 42 U.S.C. § 1983, alleging violations of his Fourth Amendment right to be free of unreasonable seizure and his Fourteenth Amendment right to due process, and a false imprisonment claim under state law. On June 30, 1999, the defendants moved for summary judgment, claiming that they had probable cause to arrest Klein.  The defendants did not raise the affirmative defense of qualified immunity in their motion for summary judgment, but Klein mentioned qualified immunity in his response to the motion and the defendants subsequently raised the defense in their reply to Klein's response.  The district court held a

---

[1]Klein was arrested without a warrant.  Michigan law permits warrantless arrests in cases of domestic assault and battery:

A peace officer may arrest an individual for violating section 81 or 81a of the Michigan penal code . . . regardless of whether the peace officer has a warrant or whether the violation was committed in his or her presence if the peace officer has . . . reasonable cause to believe both of the following:
  (a)  The violation occurred or is occurring.
  (b)  The individual has had a child in common with the victim, resides or has resided in the same household as the victim, or is a spouse or former spouse of the victim.

Mich. Comp. Laws Ann. § 764.15a (West 2000).  Section 81 of the Michigan penal code sets out the criminal penalties for assault and battery. Mich. Comp. Laws Ann. § 750.81.

As of 1995, police agencies in Michigan are required to have implemented domestic violence policies that prefer arrest: "[i]n most circumstances, an officer should arrest and take an individual into custody if the officer has probable cause to believe the individual is committing or has committed domestic violence and his or her actions constitute a crime." Mich. Comp. Laws Ann. § 776.22(3)(b)(i).  The Blackman Township preferred arrest policy was produced during Rogers's deposition, J.A. at 306 (Rogers Dep.), but it was not read into the deposition record or put in the Joint Appendix.

---

consummation of an assault." *People v. Terry*, 553 N.W.2d 23, 25 (Mich. Ct. App. 1996).  The Michigan courts have defined battery as "the willful touching of the person of another by the aggressor or by some substance put in motion by him." *People v. Bryant*, 264 N.W.2d 13, 16 (Mich. Ct. App. 1978) (internal quotation omitted).  Whether the touching results in physical injury is irrelevant. *Terry*, 553 N.W.2d at 25 (holding that "spitting upon a person is a battery").  Therefore, in order to have had probable cause to arrest the plaintiff, the defendants reasonably had to believe that Klein intended to batter or had battered his wife.

Given the definition of criminal assault and battery under Michigan law and the facts that the officers knew at the time of Klein's arrest, we conclude that Long and Rogers had probable cause to arrest Klein for domestic assault.  Officers Long and Rogers responded to a "domestic call" from the 911 dispatcher.  When they arrived at the Klein house, they were met by a visibly upset Mrs. Klein, whose finger was bleeding and who told the officers what she had told the 911 operator: her husband had been pushing and grabbing her and the children, he had prevented her from calling the police, and in physically taking the phone out of her hand, he had cut her finger.  After further conversation with Mrs. Klein and the children, the officers decided to arrest Mr. Klein.  The physical evidence of battery in the bleeding finger, combined with Mrs. Klein's description to the officers of Mr. Klein's grabbing and pushing and her immediate fear of Mr. Klein, constitutes a sufficient factual basis for the finding of probable cause.

Klein, however, argues that because neither Rogers nor Long questioned him, they failed to perform a reasonable investigation, and therefore they could not have had probable cause to arrest him.  In *Gardenhire v. Schubert*, we stated that "[an] officer must consider the totality of the circumstances,

---

(Mich. 1978).  As Mrs. Klein did not tell the police in this case that Mr. Klein was engaged in any unlawful activity, only the former kind of assault is at issue.

hearing on the summary judgment motion on October 20, 1999, at which the qualified immunity issue was discussed. In regard to the issue, the district court judge specifically stated that "[e]ven under your immunity argument, which is a question of law for the Court, before I can make my determination of immunity, I've got to know what the facts are. And to determine the facts, I give the question to the jury. That's my understanding of how immunity works." J.A. at 167-68 (Hearing Tr.). The district court then denied the defendants' motion for summary judgment "for reasons as set forth in the record." J.A. at 12 (Order Den. Defs.' Mot. for Summ. J.). Unfortunately, the district court judge did not explain in denying the defendants' motion whether he was ruling on the defendants' defense of qualified immunity or whether he was simply denying the motion on its merits.

Following the denial of their summary judgment motion, the defendants moved for a reconsideration/rehearing of the motion based on their failure to raise qualified immunity as an affirmative defense in the original motion. The defendants claimed that their failure to raise qualified immunity was "a palpable defect which, if corrected, will result in a different disposition of the case." J.A. at 131 (Defs.' Mot. for Recons./Reh'g). The district court denied the defendants' motion for reconsideration/rehearing, stating only that the defendants "failed to demonstrate a palpable defect by which the Court has been misled or that correcting any such defect would result in a different disposition of the case." J.A. at 13 (Order Den. Defs.' Mot. for Recons./Reh'g). The defendants filed a timely interlocutory appeal.

## II. ANALYSIS

### A. Jurisdiction

A district court's denial of a motion for summary judgment is generally not appealable because the applicable statute, 28 U.S.C. § 1291, only vests appellate courts with jurisdiction over a district court's "final decision." The Supreme Court has held, however, that under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the

---

without probable cause violates the Fourth Amendment." *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997). Probable cause to make an arrest exists if, at the moment of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Id.* at 298 (internal quotations omitted). Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)), and thus "[p]robable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (internal quotation omitted). However, [i]n general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Id.* (internal quotation omitted).

Klein was arrested for nonaggravated, domestic assault. Under Michigan law, "[d]omestic assault is a specific intent crime that is proved by establishing that the defendant and the victim are associated in one of the ways set forth in M.C.L. § 750.81(2)[2] . . . and that the defendant . . . intended to batter the victim." *People v. Corbiere*, 559 N.W.2d 666, 669 (Mich. Ct. App. 1996).[3] In other words, "[a] battery is the

---

[2]"Except as provided in subsection (3) or (4), an individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both." Mich. Comp. Laws Ann. § 750.81(2) (West 2000).

[3]The Supreme Court of Michigan has held that there are two kinds of simple, criminal assault: (1) an attempt to commit a battery; or (2) an unlawful act which places another in reasonable apprehension of receiving an immediate battery. *People v. Gardner*, 265 N.W.2d 1, 7

extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). In *Johnson v. Jones*, 515 U.S. 304, 313 (1995), the Supreme Court clarified that the *Mitchell* decision was "explicitly limited . . . to appeals challenging, not a district court's determination about what factual issues are 'genuine,' . . . but the purely legal issue what law was 'clearly established.'" Interpreting *Johnson*, we have stated that "in order for an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case. Only if the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a prima facie violation of clear constitutional law may we decide that the defendant is entitled to qualified immunity on an interlocutory appeal." *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563-64 (1998)).

In this case, the district court did not explicitly deny a claim of qualified immunity. However, because the district court recognized that the defendants were presenting the affirmative defense of qualified immunity at the hearing on defendants' motion for summary judgment and because the court denied defendants' motion for reconsideration/rehearing based on qualified immunity, the district court effectively denied defendants' claim of qualified immunity. *See Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995) ("[A] defendant's right to appeal the denial of qualified immunity does not turn on the phrasing of the district court's order. . . . Even when the district court denies summary judgment without stating its reasons for doing so, a court of appeals may decide the legal question underlying the qualified immunity defense."). The defendants in this case concede that we must view the facts as alleged by Klein. Appellants' Br. at 8. We therefore have jurisdiction to review the district court's denial of summary judgment to determine whether, viewing the facts in the light most favorable to Klein, the

defendants violated Klein's clearly established rights. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

## B.  Standard of Review

We review a district court's denial of qualified immunity de novo. *Flagner v. Wilkinson*, 241 F.3d 475, 480 (6th Cir.), *cert. denied*, _ S. Ct. _ , 70 USLW 3162 (No. 01-324) (Dec. 10, 2001).

## C.  Qualified Immunity

In civil suits for money damages, government officials acting in their official capacity are entitled to qualified immunity for discretionary acts that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not a defense to liability; where it is applicable, its purpose is to shield the official from suit altogether, saving him or her from the burdens of discovery and costs of trial. *Mitchell*, 472 U.S. at 526. In *Saucier v. Katz*, 121 S. Ct. 2151 (2001), the Supreme Court delineated a two-part, sequential analysis for assessing whether a government official should be protected by qualified immunity. First, we must inquire whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 2156. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. In regard to the second part of the qualified immunity analysis, the Supreme Court has stated that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.; *see also Dickerson*, 101 F.3d at 1158.

We first address whether the plaintiff has alleged facts which, when viewed in the light most favorable to him, demonstrate that the defendants' conduct violated his constitutional rights. "It is clearly established that arrest