**Samia DIXON, Plaintiff–Appellee,**

**v.**

**Chris CAMPBELL, Geoffrey Fox, Matthew Berchert, Corey Mills, and Todd Hendricks, Defendants–Appellants.**

No. 02–1260.

United States Court of Appeals,
Sixth Circuit.

March 5, 2003.

Before DAUGHTREY and COLE, Circuit Judges, and SARGUS,* District Judge.

PER CURIAM.

The defendants, Washtenaw County Sheriff's Deputies Chris Campbell, Geoffrey Fox, Matthew Berchert, Corey Mills, and Todd Hendricks, appeal from the district court's denial of their motion for summary judgment, which was based upon claims of qualified immunity in response to plaintiff Samia Dixon's suit alleging unconstitutional use of excessive force. Because we find that the district judge properly concluded that genuine issues of material fact remain to be determined in this proceeding, we lack jurisdiction over the appeals of defendants Campbell, Fox, and Hendricks. We therefore dismiss the appeals of those three defendants, in accordance with the precedent established by the United States Supreme Court in *Johnson v. Jones.* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). It further appears, however, that the two remaining defendants, Berchert and Mills, did not participate in the alleged beating of the plaintiff and could not have anticipated that defendant Campbell would take the drastic measures alleged by the plaintiff. We therefore reverse the ruling of the district court denying summary judgment to Berchert and Mills, and we remand the matter for the entry of orders dismissing those two defendants from the action.

*The Hon. Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts in this case show that Deputy Chris Campbell was impounding abandoned vehicles in Ypsilanti, Michigan, at approximately 9:30 one night, when he observed a vehicle belonging to Samia Dixon being driven toward the Dixon residence. Being familiar with the Dixons, and knowing that there were outstanding felony warrants to be served on various members of the family, Campbell directed his spotlight on the vehicle to determine whether persons other than the plaintiff were also present in the car. The manner in which the remainder of the evening's events unfolded is, however, subject to much dispute.

According to Campbell, the plaintiff then exited her car and began screaming and cursing at him. Eventually, Campbell informed Dixon that she was under arrest for "creating a disturbance" and approached her in an effort to handcuff her. The deputy claimed in his incident report that Samia Dixon then began punching him in the face and body, kicking him, and even biting his arm several times. Campbell indicated that after he succeeded in getting Dixon on the ground and cuffing one hand, the plaintiffs brothers arrived on the scene and threatened the deputy with bodily harm. Campbell reported that he then retreated to the safety of his vehicle, but not before he claims to have been struck in the head by one of Samia's brothers and not before observing the plaintiff extricate herself from the handcuff. Campbell insists that he then waited for other officers to arrive at the scene before proceeding to the Dixon residence to take the plaintiff into custody.

Dixon, however, asserts that she was driving home from evening classes at a local school when the glare from Campbell's directed spotlight temporarily interfered with her ability to see and caused her to drive her car into her father's vehicle parked in the family's driveway. According to Dixon, she feared her father's reaction to the minor damage and, anticipating the need to file a claim with the insurance company, she approached Campbell to inquire as to the deputy's name and badge number. She said that, still carrying her school books and her purse in her arms, she asked why the deputy continually "rolled past here harassing and flashing his light" and why, on prior occasions, he had threatened her younger brother. According to Dixon, Campbell then stated "that he would fuck with who he wanted to fuck with," approached the plaintiff, hit her in the mouth with his fist, and threw her and her school books to the ground. Dixon vehemently denied instigating the physical altercation and testified that she might have hit Campbell, but only in self-defense and only in an effort to free herself from the predicament. She said that after doing so, she ran in fear to her home where she remained until Campbell, along with additional uniformed deputies, arrived at the residence.

The exact sequence of events that unfolded at the Dixon home is also subject to dispute. Campbell stated in his offense report that he and the other deputies were met at the residence with hostility and threatening words and gestures. He also claimed that, after entering the dwelling to arrest Samia Dixon, the plaintiff began striking him in the face and body with her fists until he and Deputy Mills restrained her on the floor. Even then, according to the report, Dixon grabbed Campbell's testicles and began to squeeze them, In response, Campbell reportedly "attempted to perform a brachial stun on Samia. How-

ever, due to Samia's struggling and thrashing about [Campbell] struck her in the face causing her nose to bleed. Finally, with the assistance of both Deputies Fox and Berchert, Samia was taken into custody...." The incident reports filed by the other defendants that referred to the attempts to subdue Dixon essentially corroborated Campbell's version of the arrest.

The plaintiff's account of the events at her home presents a far different picture of the law enforcement officials' actions, however. Specifically, she claimed that the deputies barged into the residence, shoved Dixon's mother into a closet, and informed the plaintiff that she must accompany them out of the building. After Campbell walked toward her, Dixon admittedly punched the deputy in self-defense. Following that action, she said, Deputies Fox and Hendricks immediately forced her to the floor. Then, according to her deposition testimony, while the two deputies each held one of her arms, Campbell came back toward her, stood between her outstretched legs, and struck her across the nose and face with a flashlight, cracking bones and bloodying her face.

As a result of her encounter with the Washtenaw County Sheriff's deputies, Dixon filed suit in federal district court against them in their individual capacities "pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution." Appropriate discovery was conducted by the parties and a hearing was held before the district judge. At that time, the plaintiff dismissed all claims except her excessive force claim against "Campbell, for effectuating the actual contact with the Plaintiff that caused the injury; the other officers either for acting in concert with him or failing to intercede." The district court then denied the defen-

dants' motion for summary judgment based upon qualified immunity, stating:

> But isn't this just a question of who to believe? If the officers are telling the truth, they don't have to worry about qualified immunity, because they haven't done anything wrong, and they would have no liability on that basis.

> On the other hand, if the Plaintiff is telling the truth, then it's a purely excessive force case, isn't it?

From that determination, the defendants now appeal.

### DISCUSSION

A denial of a motion for summary judgment generally is not immediately appealable simply "because the applicable statute, 28 U.S.C. § 1291, only vests appellate courts with jurisdiction over a district court's 'final decision.'" *Klein v. Long,* 275 F.3d 544, 549 (6th Cir.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 95, 154 L.Ed.2d 26 (2002). Nevertheless, pursuant to the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Under the subsequent holding in *Johnson v. Jones,* 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), however, "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Thus, "in order for an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by

the case." *Comstock v. McCrary,* 273 F.3d 693, 701 (6th Cir.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 86, 154 L.Ed.2d 22 (2002) (citing *Shehee v. Luttrell,* 199 F.3d 295, 299 (6th Cir.1999), and *Berryman v. Rieger,* 150 F.3d 561, 564 (6th Cir.1998)).

■ In their brief in this case, the defendants are unwilling and unable to make such a concession. Indeed, if defendant Campbell were to concede Dixon's factual allegations, he would be forced also to accept the validity of the plaintiff's constitutional claim. In other words, if Campbell were to agree that he struck Dixon across the face with a flashlight while two other deputies restrained her and held her arms behind her, an indisputable case of excessive force would be established, regardless of whether the plaintiff had previously struggled with the deputy or hurled verbal insults at him. Instead, therefore, the defendants continue to maintain on appeal that Dixon's injuries resulted from an inadvertent blow to the face while attempting to restrain an unruly arrestee. Because acceptance of the defendants' account of the encounter with the plaintiff would not necessarily establish the use of excessive force, a classic *Johnson v. Jones* dilemma is presented here, and we are thus deprived of appellate jurisdiction over the dispute at this time.

■ Even accepting the plaintiff's version of the facts of this case, however, Dixon has failed to make out a case of an unconstitutional use of force against deputies Berchert and Mills. At the time Campbell allegedly struck the plaintiff, those two deputies were otherwise occupied in quelling the unsettled situation at the Dixon household. Thus, it simply does not appear that they could have anticipated that Campbell would take the drastic and unnecessary actions against the then-helpless woman, nor could they have intervened to prevent the repeated blows that

Dixon allegedly sustained. As a matter of law, therefore, those individuals could not be charged with the duty to deter Campbell from engaging in the actions allegedly undertaken by him against the plaintiff.

### CONCLUSION

For these reasons, we DISMISS the appeals of defendants Campbell, Fox, and Hendricks, as required by *Johnson v. Jones,* for lack of jurisdiction over the action at this time. Further, we RE-VERSE the denial of summary judgment to defendants Berchert and Mills and RE-MAND the matter to the district court for entry of an order dismissing them from the litigation.