**Michael DIER Plaintiff,**

v.

**CITY OF PRESTONSBURG, KENTUCKY, et al Defendants.**

No. CIV. 04–418–GFVT.

United States District Court, E.D. Kentucky. Southern Division.

March 30, 2007.

Michael Dier, pro se, for plaintiff.

Michael J. Schmitt, Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, for defendants.

## ORDER

VAN TATENHOVE, District Judge.

This matter is before the Court on the Motion for Summary Judgment filed by the Defendants. [R. 48]. The Plaintiff filed a Response [R. 57] in objection and the Defendants filed a timely Reply [R. 58] in support of their original Motion. The matter is now ripe for review. For the reasons set forth below, and in accordance with Fed.R.Civ.P. 56, the Motion for Summary Judgment will be granted.

## I.

## BACKGROUND

This action arises from several civil rights claims asserted by the *pro se* Plaintiff, Michael Dier ("Dier"). Dier claims that the City of Prestonsburg, Kentucky ("the City"), and certain of its officers—Officer Gerald Clark ("Officer Clark") and Officer John Dale ("Officer Dale")— violated his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983. [R. 1]. In addition, he alleges false arrest and assault, which could be either state or federal claims.

The facts giving rise to the Complaint are largely undisputed. On November 17, 2002, Dier was subjected to a traffic stop and arrest for driving under the influence

of alcohol and evading arrest. [Id.]. Officers Dale and Clark began their pursuit of Dier only after receiving a phoned-in complaint of another driver that Dier's vehicle was traveling at an excessive speed and in a reckless manner. Based on this citizen-complaint, the Officers began pursuit of Dier which lasted for some time and traversed several roads. It is undisputed that the Officers used their lights during the pursuit of Dier. Dier concedes these points in the *pro se* Complaint drafted and signed by Dier himself. [R. 1]. In addition, the record contains the sworn, uncontroverted affidavits of John and Lisa Bryant. [R. 49, Attach. 1–2]. The Bryants affirm that, while driving on South Lake Drive in Prestonsburg on November 17, 2002, a vehicle passed them on a double yellow line "erratically and in an unsafe manner." [Id.]. The Bryants phoned the Prestonsburg Police Department to make a report and provided the make and license plate number of the vehicle. [Id.]. Further, the record contains the sworn affidavits of Celina Thomas and Heather Conley, the 911 Dispatchers, who confirm having received the Bryants' call identifying a vehicle registered to the Plaintiff, Dier. [R. 49, Attach. 3–4]. In addition, both Ms. Thomas and Ms. Conley indicated that they had radio contact with Officer Clark during his pursuit of Dier. [Id.]. Officer Clark advised both dispatchers that he was running "signal 9" and that Dier refused to pull-over. [Id.].

Officer Clark himself provided a sworn affidavit in support of the Defendants' Motion for Summary Judgment. According to his sworn testimony, after receiving the 911 call, he observed Dier traveling at a high rate of speed past the police station. [R. 49, Attach. 4]. At this point, Officer Clark began his pursuit of Dier, which at some point exceeded 80 miles per hour. [Id.]. Dier ultimately stopped his vehicle at Highlands Regional Medical Center, where he was arrested for driving under the influence, fleeing and evading the police, reckless driving, speeding, improper passing, failure to wear a seat belt, and following too closely to another vehicle. [R. 1; R. 49, Attach. 4; R. 57, Attach. 2]. Officer John Dale provides a sworn affidavit regarding his role in the arrest of Dier. [R. 49, Attach. 7]. Officer Dale received a call from the 911 dispatcher regarding the pursuit and Dier's attempted evasion of Officer Clark. [Id.]. He then took an alternate route to aid in the apprehension of Dier, but by the time he arrived at Highlands Regional Medical Center, Dier had stopped and Officer Clark was in the process of arresting him. [Id.]. Officer Dale waited at the scene for a wrecker to pick up Dier's vehicle while Officer Clark transported Dier to the police station. [Id.]. In addition, the uncontroverted testimony of Rufino Piedad and David LeMaster, employees of Highlands Regional Medical Center, confirms Officers Clark and Dale's description of the stop and ultimate arrest. [R. 49, Attach. 6–7]. Both Mr. Piedad and Mr. LeMaster observed Officer Clark's pursuit of Dier, and the use of blue lights on his cruiser. [Id.]. In addition, both saw Dier pull into the parking lot and his subsequent arrest by Officer Clark.[Id.]. Finally, both gentlemen stated that although Dier acted uncooperatively during the stop and arrest, neither saw Officer Clark draw a weapon at any time. [Id.].

According to the transcribed testimony from the state court preliminary hearing, Mr. Dier admitted to drinking the night before his arrest and took a breathalyzer test. [R. 57, Attach. 2]. Dier submitted this evidence himself. [Id.]. As a result of his arrest, Dier was incarcerated pending resolution of the criminal charges against him. Dier pleaded guilty to the charge of driving under the influence and the evasion charges were dismissed.

Based upon these events, Dier's Complaint asserts four counts against the individual defendants and the City. Count I alleges that Dier's constitutional rights were violated when the individual defendants arrested him without probable cause; thus, he was subjected to an unreasonable search and seizure. In Count II, Dier contends that he was "assaulted" by Officer Clark which amounted to an unlawful seizure when Officer Clark handcuffed him as part of the arrest. For Count III, Dier alleges that he was falsely arrested and imprisoned and that the individual officers fabricated evidence against him. Finally, in Count IV, Dier makes several claims. He asserts that the City violated his constitutional rights under Section 1983 by effectuating policies or customs that are deliberately indifferent to the constitutional rights of persons in Prestonsburg generally, that the City failed to properly train its officers, and that the City participated in an alleged "cover up" of the false arrest by destroying exculpatory evidence. As a result, Dier claims, the City is responsible for the acts of Officers Clark and Dale.

The Defendants filed a Motion for Summary Judgment arguing that they are entitled to judgment as a matter of law. [R. 48–49]. In support of their Motion, the Defendants first argue that the Section 1983 claims against the individual officers are barred by the doctrine of qualified individual immunity. [R. 49]. Because probable cause to arrest Dier existed, the Officers argue that he cannot show that their conduct toward him violated a clearly established constitutional right. [Id.]. Likewise, any claims for false arrest or illegal imprisonment should be barred under Kentucky state law. [Id.]. As to the claims against the City, the Defendants argue that those too must fail because Dier has simply failed to show an "official" policy existed to violate his constitutional rights, and further, that the City cannot be held liable solely under a *respondeat superior* theory of liability. [Id.].

Dier filed a Response objecting to the Motion for Summary Judgment [R. 57]. The response contains no citation to legal authority nor does it establish any disputed facts *material* to the claims before the Court. Rather, the entire response reads like a fictional tale of conspiracy and fabrication completely unsupported by factual evidence. Dier's proclivity for conjecture and innuendo is evidenced by the factual support upon which he draws for his allegations. For example, because the City of Prestonsburg taped over video footage of the area surrounding the police stations, as is its normal practice, Dier convinces himself that the videotape was intentionally destroyed because it certainly would have contained exculpatory evidence to exonerate him of all charges. [R. 57]. Likewise, an open records request made by the local newspaper at Dier's behest was denied pending completion of the criminal investigation. [R. 57]. Because this request was denied initially, and that denial was ultimately overruled by an opinion from the Kentucky Attorney General's Office, Dier attributes the original denial to the alleged conspiracy to fabricate a pursuit of him. [Id.]. Other than his own surmising, he has no factual evidence to support this theory. Dier also makes much ado about whether Officer Clark had his sirens on during the entire pursuit or whether the pursuit times logged by the 911 dispatcher match the times shown on a completely unrelated surveillance video made by a local bank. [Id.]. Aside from the lack of factual support for his theory, the lone fact that Dier pleaded guilty to the driving under the influence charge belies any contention of fabrication that he may make.

Although these are just a few examples of the response filed by Dier, the sum total of every fact alleged by Dier does not

amount to any one disputed material fact sufficient to overcome the Defendants' otherwise well-taken Motion for Summary Judgment. Accordingly, the Motion for Summary Judgment will be granted.

## II.

## DISCUSSION

### A. Legal Standard

Fed.R.Civ.P. 56(c) provides that judgment for the moving party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Browning v. Dep't of Army*, 436 F.3d 692, 695 (6th Cir.2006) (citations omitted). While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (non-movant must "do more than simply show there is some metaphysical doubt as to the material facts") (citations omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Stated alternatively, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the instant case, the Court finds that the Defendants met the initial burden required of them— to establish that no genuine issue of material fact exists as to each claim asserted by Dier— and as such, they are entitled to judgment as a matter of law. Dier, on the other hand, fails to meet his burden of showing some evidence upon which a jury could reasonably return a verdict for him. The Court considers each claim asserted by Dier in turn.

### B. Section 1983 Claims—Officers Clark and Dale

 Dier claims that he is entitled to damages for breach of 42 U.S.C. § 1983, which provides for a right of action as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983. The Defendants correctly assert that they enjoy qualified immunity from suit in this case. In civil suits seeking money damages, government officials acting in their official capacities are entitled to qualified immunity for those discretionary acts that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,

73 L.Ed.2d 396 (1982) (citations omitted). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Courts utilize a two-step approach to determine whether a defendant acting under color of law is entitled to qualified immunity. The Court determines "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). When called upon to decide whether the Plaintiffs have sufficiently alleged the violation of a *clearly established* right, the Court must evaluate the claim in a "particularized" and fact specific manner. *Brosseau*, 543 U.S. at 199–200, 125 S.Ct. 596.

In his Complaint, Dier alleges that Officers Clark and Dale violated his constitutional rights by arresting him without probable cause, *i.e.*, a false arrest. To this end, Dier claims he was subjected to an unreasonable search and seizure given the falsity of the arrest. In addition, Dier contends Officer Clark "assaulted" him which amounted to an unlawful seizure when Officer Clark handcuffed him as part of the arrest. Although Dier distinguishes between the false arrest and the assault by handcuffing, the distinction is irrelevant because handcuffing was a germane part of the arrest. The claims fail as a matter of law under Section 1983 because *first*, probable cause existed to make the arrest, and *second*, Dier pleaded guilty to the driving under the influence charge against him.

■ It is clear that Dier has not alleged facts which, when viewed in the light most favorable to him, demonstrate that Officer Clark or Dale violated a clearly established constitutional right. While it is true that " 'arrest without probable cause violates the Fourth Amendment,' " *see Klein v. Long*, 275 F.3d 544, 550 (6th Cir.2001) (citations omitted), the arrest in this case was made *with* probable cause. As the Defendants correctly note in their supporting memorandum, "[p]robable cause to make an arrest exists if, at the moment of the arrest, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' " *Id.* (internal quotations omitted) (alteration in original). Rather than have this Court impose a decision in hindsight, the existence of probable cause is assessed " 'from the perspective of a reasonable officer on the scene.' " *Id.* (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir.2001)). Accordingly, such determinations " 'involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.' " *Id.* (citing *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir.2000)).

Under Ky.Rev.Stat. § 431.005, a peace officer who has probable cause may make an arrest without a warrant for either a felony or misdemeanor committed in his presence. He may not arrest without a warrant for a misdemeanor committed outside of his presence except for driving under the influence while operating a motor vehicle. *See Ky.Rev.Stat.* § 189A.010. Also, an officer may not make a warrantless arrest for a violation unless it is committed in his presence and the offense

being charged is a violation of Ky.Rev. Stat. § 189.290 (reckless driving); or Ky. Rev.Stat. § 189.393 (failure to comply with traffic officer's signal). See Ky.Rev.Stat. § 431.015(2).

In this case, Officer Clark received a citizen's complaint from the Bryants regarding Dier's erratic and dangerous driving. Based on that information, and his own observations of Dier during a high-speed pursuit, Officer Clark determined that Dier was speeding and fleeing a police officer. Officer Clark kept in continuous contact with the dispatcher at the police department and provided a detailed description of this chase. In fact, Officer Clark requested assistance from Officer Dale when Dier failed to pull over and continued his attempted elusion. In addition, when questioned about his alcohol intake, Officer Clark states that Dier admitted he'd been drinking the previous night, a fact which Dier does not contest. In fact, it is uncontested that Dier ultimately plead guilty to the driving under the influence charge. [R. 49, Attach. 12; R. 57, Attach. 22]. Dier does not present any actual evidence or come forward with any facts to the contrary. His response contains nothing more than conjecture and theory. This is simply insufficient to meet his burden to overcome summary judgment in this case. As a result, this Court must conclude, based on the law as set forth above, that no genuine issue of material fact exists as to whether Officer Clark had probable cause to make an arrest without a warrant in this circumstance. Accordingly, the Section 1983 claims against the individuals, Officers Clark and Dale, are barred by the doctrines of qualified immunity and qualified official immunity making summary judgment proper.

■ That the claim for false arrest must be dismissed is even more clear when the Court considers that actual probable cause to arrest Dier was not required for the Officers to be immune from a false arrest suit. Rather, the Officers are immune from suit if the Officers *arguably* had probable cause to arrest, *i.e.*, was it reasonable to believe probable cause existed. *See Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir.1993). In *Heck v. Humphrey,* the United States Supreme Court held that:

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey,* 512 U.S. 477, 486–487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (internal citations omitted).

As the Court noted earlier, it is uncontested that Dier entered a guilty plea to the charge of driving under the influence, and the fleeing charge was dismissed given the time already served by Dier. [R. 49, Attach. 12; R. 57, Attach. 22]. This plea was accepted and a judgment of conviction was entered by the state court judge. [R. 49, Attach. 12]. The guilty plea unquestionably stems from the events surrounding his November 17, 2002 arrest by Officers Clark and Dale. As such, Dier is estopped from denying conduct that constitutes the essential elements required for him to be convicted of those offenses. *See Mason v. Louisville Police Dep't,* No. 00–5932, 8 Fed.Appx. 326, 327–28 (6th Cir.

2001) (citations omitted). Likewise, no evidence suggests that this verdict has been reversed, expunged or declared invalid. Therefore, as matter of law, Dier is collaterally estopped from maintaining a claim that, in order to prevail, requires proof of insufficient probable cause to arrest and prosecute Dier for the crimes for which he was convicted. *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364; *Mason,* No. 00–5932, 8 Fed.Appx. at 327–28. Furthermore, the fact that Dier was originally charged with additional counts that were later dismissed as part of his plea agreement is irrelevant. Those dismissed counts and the counts on which Dier was convicted were both part of the same prosecution and arose from the same arrest.

■ Finally, the assault claim must fail for the same reasons outlined above. The only factual basis asserted by Dier for the assault is that he was handcuffed as part of his arrest. If the Officers had probable cause to arrest Dier, then it only naturally flows that the act of handcuffing him as part of that lawful arrest does not constitute an assault. Summary judgment in favor of Officer Clark as to this claim also is proper.

**C. Section 1983 Municipal Liability—City of Prestonsburg**

■ The City of Prestonsburg argues that it cannot be responsible to Dier under Section 1983. First, the City contends that a municipality has no respondeat superior liability under this section. [R. 49, 58]. Second, they argue that no official policy to deprive Dier of his constitutional rights existed. [Id.]. The Court finds that because Officers Clark or Dale violated none of Dier's clearly established constitutional rights, it need not address Dier's claims against the City. Given the Court's disposition regarding the individual claims against the officers, there cannot under the current circumstances be a municipal policy or custom, the implementation or effection of which deprived Dier of a constitutional right.

■ Assuming, *arguendo,* Dier had established a violated constitutional right, his claims against the City would still fail. In order to maintain a claim based upon municipal liability, "the action that is alleged to be unconstitutional [must] implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are also liable for constitutional deprivations "visited pursuant to governmental 'custom' even through such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. 2018. Dier's Complaint is void of any allegations—and the record void of evidence—of any municipal policy or custom, as evidenced by a pattern of behavior, the execution or implementation of which caused Dier's alleged deprivation of constitutional rights.

To the contrary, the only support for this claim is contained in the Complaint. Dier merely alleges that:

35. The City of Prestonsburg developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of persons in Prestonsburg, which caused the violation of Doe's rights.

36. It was the policy and/or custom of the City of Prestonsburg to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City of Prestonsburg

37. It was the policy and/or custom of the City of Prestonsburg to inadequately

supervise and train its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of it police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct. [R. 1]. These bare allegations, devoid of any factual support, credible or otherwise, are wholly insufficient to overcome summary judgment. Dier does not have the right to a trial based on innuendo and conjecture under Rule 56. Accordingly, the City is entitled to judgment as a matter of law on this claim.

◼ Finally, the City is not responsible for the acts of the individual officers in any event. Both the U.S. Supreme Court and the Sixth Circuit Court of Appeals have adopted the view that a municipality cannot be held liable solely for the acts of its employees who commit a tort. There is no *respondeat superior* liability for a municipality under Section 1983. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018 (1978); *Doe v. Patton,* 381 F.Supp.2d 595, 599 (E.D.Ky. 2005).

### D. Section 1983—Failure to Train— City of Prestonsburg

◼ Although he does not plead it with any specificity, or allege any facts in support of it, Dier claims that the City of Prestonsburg failed to properly train its officers. [R. 1]. Again, the Court is unclear whether this claim finds it roots in federal or state law. To the extent Dier makes this claim under Section 1983, the Court holds that it must fail as a matter of law. First, because the Court finds as a matter of law that Defendants have not violated any (clearly established) constitutional or statutory rights about which Dier has plead, the conspiracy claim must be dismissed. Second, the record does not

support the claim as a matter of law pursuant to the standards for surviving a motion for summary judgment and will be dismissed. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

◼ While it is clear that a municipality can be liable under Section 1983, liability only attaches "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citation omitted). In determining whether the City is liable for negligent training, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 390–391, 109 S.Ct. 1197 (internal citations omitted).

In this case, the only evidence presented by Dier on this point is a general allegation in his Complaint that the City failed to properly train its officers. Arguably, Dier's contention that Officer Clark wiped the breathalyzer with a sanitizing agent prior to administering it could be construed as evidence of this claim, but any such allegations are refuted by the affidavit of the Chief of Police regarding the training completed by Officer Clark. [R. 49, Attach. 9]. In addition, the Official Training Transcript from the Department of Criminal Justice Training shows that Officer Clark had completed his breath test operator certification and that such

certification was valid and up-to-date at the time he administered the test on Dier. [R. 49, Attach. 11]. Officer Dale also has a complete and adequate training record. [Id., Attach. 10]. Further, an independent investigation by the Kentucky State Police confirmed that Officer Clark's actions in administering the breathalyzer test were appropriate and could not serve as the basis for a criminal complaint filed by Dier. [R. 57, Attach. 19]. This claim simply cannot survive as a matter of law.

### E. Conspiracy Claim—All Defendants

Dier continually asserts that the entire City of Prestonsburg, including the Mayor, the police department, and essentially anyone Dier spoke to regarding his claim, are involved in a conspiracy to manufacture and fabricate the pursuit in this case. Dier asks this Court to believe that the entire law enforcement body engaged in a concerted and complex effort to "create" the high-speed pursuit which led to his arrest.

First, because the Court finds as a matter of law that Defendants have not violated any (clearly established) constitutional or statutory rights about which Dier has plead, the conspiracy claim must be dismissed. Second, the claim of conspiracy is based on nothing more than bald unsubstantiated allegations and innuendo, and the record does not support the claim as a matter of law pursuant to the standards for surviving a motion for summary judgment and will be dismissed. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### F. State Law Claims

 Finally, to the extent the claims for false arrest and/or assault could be construed as state law claims, those should be handled by the state courts. The Sixth Circuit "has adopted the position that the district courts have minimal discretion to decide pendent state law claims on the merits once the basis for federal jurisdiction is dismissed before trial." *Province v. Cleveland Press Pub. Co.,* 787 F.2d 1047, 1055 (6th Cir.1986) (citations omitted); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if [ ] the district court has dismissed all claims over which it has original jurisdiction."). The Court is not of the opinion that "overwhelming interests of judicial economy" provide cause in this case for the Court to retain jurisdiction over the Plaintiffs' pendent claims that the Court has not otherwise addressed above. *Province,* 787 F.2d at 1055; *see also Brandenburg v. Housing Authority of Irvine,* 253 F.3d 891, 900 (6th Cir.2003) ("The usual course is for the district court to dismiss state-law claims without prejudice if all federal claims are disposed of on summary judgment.") (citations omitted). Accordingly, to the extent Dier attempts to assert any state law causes of action not discussed herein, those claims would be dismissed without prejudice, subject to any rights he may have to re-assert those in state court.

### III.

### CONCLUSION

Accordingly, pursuant to Fed.R.Civ.P. 56, and for the foregoing reasons, it is hereby ORDERED as follows:

1. The Defendant's Motion for Summary Judgment [R. 48] is **GRANTED;**

2. The Complaint is **DISMISSED with prejudice;**

3. The Court finds that the Plaintiff's Complaint contains no causes of action that are dependant upon federal constitutional or federal statutory law for recov-

ery; that remaining causes of action not specifically pleaded or construed herein are based entirely in state law and therefore dismissed without prejudice; and that all claims plead in this matter that might be brought pursuant to 42 U.S.C. § 1983 are **ADJUDGED** in favor of the Defendants;

4. Judgment will be entered contemporaneously herewith; and

5. This is a final and appealable Order.